# Ahrens v. Ahrens.

May 2, 1950.

Rehearing denied June 13, 1950.

Lawrence F. Speckman, Judge.

56

William M. Bullitt and Thomas S. Dawson for appellant.

Samuel L. Greenebaum for appellee.

VAN SANT, COMMISSIONER—Reversing judgment on original appeal, affirming on cross-appeal.

The action was instituted by appellee, Edward Ahrens, against appellant, Katrine Ahrens, for divorce on the ground of cruel and inhuman treatment, subsequently amended to include the ground of five years separation. Appellant joined issue by answer, originally counterclaimed for alimony only, but, by amendment, alleged abandonment and cruel and inhuman treatment and prayed for divorce in addition to alimony. The case was submitted to Honorable Ben F. Ewing, Deputy Commissioner of the Jefferson Circuit Court to hear evidence and report to the Chancellor. The Commissioner found that neither appellant nor appellee was entitled to a divorce on grounds of cruel and inhuman treatment or abandonment, but recommended that divorce be decreed to appellee on the ground of five years separation, appellant not having asserted her right to divorce on this ground. He further recommended a nominal amount to be paid appellee as alimony but made no recommendation in respect to the amount to be allowed appellant's attorney and taxed as costs against appellee. The exceptions to the Commissioner's report were overruled except to the extent indicated by the judgment, which granted appellee a divorce on the sole ground of five years separation; and awarded alimony to appellant in the lump sum of $30,000, to be credited by payments of alimony fixed at the sum of $300 due monthly after the rendition of the judgment and during the pendency of this appeal. In accordance with an

agreement of the parties, $3,000 was allowed as a fee to the Commissioner to be taxed as costs. $1,500 was allowed by the court to appellant for her attorneys, likewise to be taxed as costs. Appellee was granted an appeal in the Lower Court but appellant was not; however, appellant was granted an appeal in this Court previous to appellee's perfection of his appeal.

In the record of the appeal granted by this Court, appellant filed a printed transcript of the evidence in accordance with section 1.090 of the Rules of the Court of Appeals. Appellee appears to have prosecuted a separate appeal in which he filed the original typewritten transcript of the evidence; however, this appeal actually was filed in the form of a cross-appeal wherein he named his former wife as appellant and himself as appellee. He then moved the court to consolidate the appeals and to strike from the record the printed transcript of the evidence filed by appellant on her appeal. The motion to consolidate was sustained by previous order of this Court, but the motion to strike was passed to the merits and now is overruled. We will treat and refer to Mrs. Ahrens' appeal as the original and Mr. Ahrens' as the cross-appeal.

Appellant complains that the court erred in not granting her a divorce on the ground of abandonment and cruel and inhuman treatment after the abandonment. She asks that the award of alimony to her be increased to a lump sum award of $175,000 or monthly payments aggregating $7,500 per year, and that the fee allowed for her attorneys be increased in a reasonable sum.

The printed transcript of evidence contains 1,400 pages and the typewritten transcript is composed of 17 volumes of testimony, one volume of exhibits, and two volumes of the remaining record. We have read and analyzed all the testimony, but will not relate it in detail since such procedure would uselessly extend the opinion.

We agree with the Chancellor that neither party has shown the other to be guilty of any act of cruelty or inhumanity which would justify the granting of a divorce to the other. However, we disagree with him in his finding that appellant was not entitled to a divorce on the ground of abandonment, which requires reversal of the judgment on the original appeal, Doolin v. Doolin,

211 Ky. 207, 277 S. W. 243; and because the act of abandonment occurred previous to the expiration of the five year separation, we are of the opinion that the court erred in granting appellee a divorce on any ground, but this part of the judgment cannot be reversed. Smith v. Smith, 297 Ky. 395, 180 S. W. 2d 275. It follows, however, that appellant was entitled to alimony as a matter of law. Rayburn v. Rayburn, 300 Ky. 209, 187 S. W. 2d 804. The facts hereinafter disclosed will be sufficient, we think, to explain our decision.

The parties were married in July, 1940, and separated in June, 1942. No child was born of the union. On the morning of June 6, 1942, without any previous intimation of his intent to do so, appellee left the apartment in which he and appellant were residing and returned to his mother's home. He enlisted in the Armed Forces of the United States in October, 1942, in which service he remained approximately four years, and, upon discharge, again took up his abode at the home of his mother. During this interim, appellant wrote several letters to him seeking a reconciliation, but all such efforts on her part met with no favorable response. The action for divorce was instituted on March 18, 1943.

The alleged acts of cruel and inhuman treatment now relied on by appellee to reverse the judgment may be classified in his language as follows: "(1) Defendant (appellant), an incurable social climber, was at no pains to conceal, either at home or publicly, her disdain for her husband's family, friends or activities; (2) Defendant's subtle threat against her husband's life and her possession of a pistol; (3) Defendant was callous, publicly immodest, and had an obsession with sex; (4) Defendant was untruthful to an extreme and an incurable equivocator; and (5) Defendant's cruel conduct prior to their separation brought on a recurrence of plaintiff's stammering which, at the time of their marriage, had been cured."

The matters relied on in support of appellee's charge that appellant was an "incurable social climber" and held her husband's family, friends and activities in disdain seem to be that appellant wanted to join the Country Club and appellee did not, and that appellee was interested in Boy Scout work and in associating with former fellow employees of the American Radiator and

Standard Sanitary Corporation in Louisville, in preference to groups of higher income. Appellee contends that appellant was obsessed with family background and social prestige and he proved beyond doubt that he was possessed of an inferiority complex. He complains that appellant took no interest in his activities in Boy Scout work, although he does not deny that she entertained some of his former fellow workmen of the American Radiator and Standard Sanitary Corporation plant. It is hard to determine what activities in respect to the Boy Scouts he expected his wife to engage in, unless it was encouragement and helping to entertain them in social activities, which she claims she did to the extent that conditions rendered it possible. Several pages in appellee's brief are devoted to comments on appellant's testimony, wherein she referred to ''Cub Scouts'' instead of ''Boy Scouts,'' which infraction is about as important as any other complaint of the husband in respect to his wife's activities. Appellee's counsel, with much flourish, points to appellant's testimony that on a certain occasion ''He (Edward) was dressed informally'' as exemplary of her obsession in respect to social prestige. This to our minds, is ''much ado about nothing.''

The second ground, alleging a subtle threat against his life, had to do with the fact that appellant owned a pistol previous to their marriage and retained possession of it thereafter. There is contradictory evidence as to whether the following rumor reached appellee's ears before or after their separation, but whenever it was, appellant's maid is supposed to have telephoned appellee's mother, who in turn told appellee that appellant, with gun in hand, in substance said that if she ever committed suicide, she would take someone with her. One would have to be possessed of high imagination to characterize such a statement, if it was made, as a threat, veiled or otherwise, against the life of appellee.

Appellee's charge of callousness is an inference he would have us draw from appellant's testimony in the case. This testimony was given in rebuttal of statements made by appellee in his testimony and made at the insistence of her attorney. Undoubtedly, persons testifying in law suits reveal matters they would not mention in private life, and we are convinced that such revelations in this case were made under the impres-

sion that it was necessary to her defense of appellee's charges.

His charge of public immodesty was based on the testimony of a nurse who stated that appellant threw back a sheet so that an interne could bandage her toe which had been operated on at the Norton Infirmary, and in doing so, indecently exposed herself before him. This occurrence supposedly took place in the hospital in the presence of the nurse. This bit of gossip reached the ears of appellee through his mother's repetition of it. Fifteen doctors and seven nurses were called to, and did, refute this rumor. A psychologist also testified that appellant, in his home, sat in such a manner that her undergarments were exposed, and on one occasion in the hospital she exposed more of her body than was necessary, but he could not even remember whether she was sitting up or lying in bed on that occasion. His failure to remember whether she was sitting up or lying down detracts materially from the probative value of his testimony.

Appellee's complaint that appellant had an obsession with sex finds its support in the incidents we have related and the fact that appellant testified that on a certain occasion when her arm was injured she wore a revealing nightgown, and that she decorated the bathroom in her apartment with mirrors. The "revealing" nightgown was purchased by appellee on an occasion when he was not in the company of his wife, and was worn on the occasion complained of at the insistence of appellee himself. The complaint in respect to the bathroom is so garbled and far fetched that it is difficult for us to explain. Appellant testified that she mirrored the bathroom so that it would at least partially resemble the bathroom appellant used in his mother's home. Appellee swings on this statement to the remote conclusion that because she so testified, she must be one whose mind dwells on matters of sex, although both he and his attorneys are frank to admit that she is not guilty of any moral turpitude.

The evidence offered in support of the charge that appellant is an incurable equivocator is as bereft of substance as that introduced in support of the charges heretofore discussed. There, as in most of the instances relied on by appellee, his mother was the medium

through which the incidents were related. Exemplary of the testimony in this respect is that of appellee himself:

"Now one time, for example, we were going to take a trip up to the Edgewater Beach Hotel. Of course, that's right on Lake Michigan, which is a cold lake in which to swim. Mother had told her (appellant), 'well, I hope you have lots of nice warm weather and that you have a nice vacation and it isn't too cold,' and she (appellant) came back and said 'Oh, your mother feels sure that it will be too cold up there in Chicago for you to have a good time,' just like she was throwing cold water, that is, my mother was trying to kill our little vacation or something like that.

"* * * *I found out* that *she* was not telling the truth when I went back and *asked my mother* whether she expected it was going to be too cold as she had told Katrine, and she said no and repeated what she had said." (Our emphasis.)

There is nothing in this testimony which would indicate appellant and not her mother-in-law gave the untrue version of the conversation, but we think it matters little either way. Participants in a conversation, in all honesty, ofttimes gather different and varying impressions of what has been said, and the matter at issue in this conversation was not of sufficient importance to make a liar out of anybody or to present a motive for lying, prevaricating, or equivocating, as the case may be.

The evidence in respect to the cause of appellee's affliction in respect to his speech as well as to the time of its recurrence is conflicting to say the least, and certainly none of the acts complained of was supported by sufficient substance to cause a normal person to become a nervous patient. We are of the opinion from reading all of the testimony that the substantial charges were not sustained by any evidence of probative value, and those charges, which were to some extent sustained by the evidence, are so trivial that they cannot be considered sufficient to support a ground for divorce.

But we have concluded that the filing and publication of the matter contained in appellant's answer and counterclaim corroborates appellee's contention that appellant maintained a superior attitude toward him

and his family to such an extent that her award must be reduced accordingly. The answer and counterclaim constitute 33 pages of printed matter. It was prepared by one of the leading members of the Louisville Bar, who, no doubt, was cognizant of the fact that a pleading pertinent to the issues could have been clothed in verbiage which would have required no more than two pages of typewritten matter. The immaterial, redundant, and irrelevant matter composing the rest of the pleading amounts to no more than a personal attack upon appellee and his family. It smatters of an argument to a jury rather than a proper plea to a court of equity. We must assume that appellant is responsible for the preparation of this pleading: she admittedly published it by circulating approximately seven copies to friends common to her and her husband. Appellant contends that this act on her part was retaliatory and was done to combat propaganda spread against her by her mother-in-law. It was the publication of this answer and counterclaim that caused the Chancellor to refuse to grant a divorce to appellant on her charge of abandonment. We do not give it such prominence: It certainly was not a factor in appellee's decision to leave his wife, because the act was not committed until after he had left her and instituted divorce proceedings against her upon untenable grounds. We do think, however, that it shows a frame of mind capable of provoking her husband to such an extent that it may have precipitated the breach, and, to that extent, render her not completely free of fault; which leads us to a consideration of the amount to be awarded appellant and her attorneys by way of alimony and fees to be taxed as costs in the action.

Generally, if the husband's estate is sufficient to permit it to be done, alimony should be allowed the wife in a lump sum instead of in monthly payments. Turner v. Ewald, 290 Ky. 833, 162 S.W.2d 181. In arriving at the amount of alimony, courts have no fixed rule but will take into consideration the age, health, social position, and earning capacity of both husband and wife, and further will consider the estate of the husband from which his income is derived, Sabel v. Sabel, 286 Ky. 575, 151 S.W.2d 56; and in at least two instances this Court has expressed the view that probable accretion of wealth from other sources may be considered. Muir v. Muir, 133 Ky. 125, 92 S. W. 314, 28 Ky. Law Rep. 1358,

4 L.R.A., N.S., 909; and Shehan v. Shehan, 152 Ky. 191, 153 S.W. 243. Appellant has an estate in his own right which he inherited from his maternal grandfather, supplemented by certain gifts from his mother in the total value of more than $450,000. In addition to this, he has life estates in two trust funds aggregating approximately $220,000 which cannot be taken into consideration in awarding a lump sum since such interests will terminate on his death. The estate which he owns in fee is composed of real estate not to exceed in value the sum of $40,000; whilst the personal estate is in excess of $425,000, invested in securities which seem to be sound from the experience of their earnings in the past. This estate has increased gradually and yearly since it came into the hands of appellee and the corpus has not been disturbed. It is not likely that the corpus of the estate will be reduced by appellee's personal requirements, since he is the potential heir to over a million dollars. However, we are not taking into consideration any potential wealth of appellee in fixing the amount of alimony in this case.

Appellant has no estate of her own and her ability to earn more than the bare necessaries of life has not been proved. Whilst, as we have said, there is no fixed rule, nevertheless, this Court, in fixing lump sum alimony, generally has allowed to the wife one-third of the husband's estate from which the source of its payment must be derived, where there appears no qualifying circumstance in respect to the treatment of the parties by each other. But, as we have observed, we are of the opinion, as was the Chancellor, that the filing and publication of the printed answer and counterclaim constitute a qualifying circumstance, although it was not sufficient to be adjudged an act of recrimination upon which to base a denial of her petition, by way of counterclaim, for divorce.

We are of the opinion that the award to appellant in the circumstances of this case should be in the sum of $90,000 with interest from the date of the judgment entered pursuant to the mandate of this Court, without any credit being allowed for temporary or permanent monthly payments theretofore made. We are further of the opinion that the amount allowed appellant for her attorney's fee to be taxed as costs against appellee is

inadequate for the services rendered and this amount should be increased to the total sum of $7,500 with interest thereon from the same date interest will run on the judgment of alimony. In fixing the fee for appellant's attorney, we are allowing nothing for the preparation of the answer and counterclaim which we have criticized herein, nor are we making any allowance to him or his client for having it printed and distributed. This is a matter which must be settled between them.

The judgment on the original appeal is reversed with directions that it be set aside and that another be entered to conform to this opinion.

' The judgment on the cross-appeal is affirmed.