### JAMES v. JAMES.

Court of Appeals of Kentucky.
May 2, 1952.

Otto C. Martin, Hartford, T. H. Demunbrun, Brownsville, for appellant.

B. M. Vincent, Charles Whittle, Brownsville, for appellee.

WADDILL, Commissioner.

In this action each party sought a dissolution of the marriage relation. The Chancellor granted appellee a divorce and awarded her alimony in a lump sum of $2,000 and adjudged the costs of the action, including attorneys' fees, against appellant.

On direct appeal it is urged: (1) That appellant was entitled to a divorce and consequently alimony should not have been granted; and, (2) that in the event appellee was entitled to alimony, the amount adjudged was excessive. On cross-appeal it is argued that the amount of alimony and the sum allowed appellee for attorneys' fees are each grossly inadequate.

The record discloses that the parties were married on June 2, 1946, and lived together for a period of 39 days. At the time of his marriage Thomas was about 25 years of age and was the only child of Emma James, who was a widow. He and his mother occupied a three-room house on a 40-acre farm which belonged to Emma. Thomas' father died when Thomas was about 10 years old, leaving Emma in difficult financial circumstances and with the obligation of rearing Thomas. By self-denial and long hours of labor in the fields raising crops, cattle, chickens, and operating a small dairy, Emma has now accumulated with Thomas' help, property estimated at the value of $16,000.

Several years prior to 1946, Thomas began to court Clydene Ray who was several years younger than he. Clydene lived with her parents on a nearby farm. She had suffered an attack of infantile paralysis when she was young and was not physically strong. Shortly after the marriage ceremony, which had been arranged to take place while the "ground was wet" so that Thomas would not miss time from his work, Thomas took his bride to his mother's farm to make their home. After arriving there they helped his mother milk the cows and perform the other chores. After supper they retired to a room which had been prepared for them. It was then related by Thomas that he had always slept in the room with his mother and at his suggestion they proceeded to bed in the room occupied by his mother, which they continued to occupy as their bedroom throughout the time they lived together. According to Clydene, after she and Thomas got into their bed, Emma then sprang from her bed, seized a window stick, struck Thomas and said:

"Old boy you are going to be sorry of this" and then ran out of the house. Clydene further testified that Thomas told her the next morning that his mother had attempted suicide. Both of these statements are denied by Thomas and his mother. Many other indecorous acts of Thomas and his mother were related by Clydene, which, if true, were not conducive to Clydene's welfare and happiness. It is not disputed that several days after her marriage Clydene became ill due to an irregularity of her menstrual period. Thomas took her on several occasions to Bowling Green, Kentucky for medical attention. On July 11, 1946, Thomas again took Clydene to her

physician. The doctor treated her and directed her to return the following day. Clydene's parents resided on the way to Bowling Green and she spent the night at their house. Thomas returned to his mother's home. The following day Thomas accompanied his wife on her visit to her physician and thereafter drove her to her parents' home where she was to again spend the night. Clydene stated that the physician directed her to return for further treatment the next day, to which Thomas had agreed. However, Thomas testified that he understood from Clydene that her uncle would bring her to Thomas' home on the following Sunday. This misunderstanding was apparently the breaking point of their romance and marriage as Thomas did not thereafter seek the companionship of Clydene, although she maintains that she tried to effectuate a reconciliation.

About 10 months later Thomas filed this action seeking a divorce on the grounds of cruel and inhuman treatment and when a year had expired, he amended his petition charging his wife with abandonment. Clydene filed answer setting forth her affections for her husband and offered to return to him, but after Thomas and his mother testified in the suit, Clydene then filed an amended answer wherein she sought a divorce and alimony on the grounds of cruel and inhuman treatment. We have no doubt that Thomas' testimony containing charges against his wife concerning their intimate marital relations, all of which were denied by her, prompted Clydene to seek a divorce.

While it may be true that had it not been for the interference of others, the trouble between the parties might have been adjusted, yet it cannot be doubted that Thomas' conduct was such as to place on his shoulders the blame of the separation.

While the judgment granting the divorce is not reviewable here, we may consider the evidence on the wife's application for alimony. We have read the testimony and find that it was amply sufficient to justify the Chancellor's action in granting Clydene a divorce. That being true, she is entitled to alimony as a matter of law. Hardman v. Hardman, 308 Ky. 284, 214 S.W.2d 391; Griffin v. Griffin, 154 Ky. 766, 159 S.W. 597.

In fixing the amount of alimony the husband's present and future prospects as well as his ability to earn money, should be given consideration. Appellant inherited an interest in a farm in which his part is valued at $500. Due to the manner in which appellant and his mother handled their business and in light of his evasive testimony concerning his earnings, it is difficult for the court to determine with any degree of accuracy his present financial ability to pay alimony. Therefore, not only his earnings from his own efforts, but his likely inheritance from the estate of his mother, he being the only child, may be taken into account. Muir v. Muir, 92 S. W. 314, 28 Ky.Law Rep. 1355, 4 L.R.A., N.S., 909.

In the case of Metcalf v. Metcalf, 244 Ky. 536, 51 S.W.2d 675, the court quotes with approval from Shehan v. Shehan, 152 Ky. 191, 153 S.W. 243, 245, as follows:

" 'In estimating the allowance of alimony, there is no fixed standard. The matter is within the sound judicial discretion of the chancellor. It will be regulated by a number of circumstances that properly enter into the consideration. Among them is the size of the estate of the husband, and its productiveness; his income and earning capacity; his age, health, and ability to labor; the age, health, and station of the wife; and it may be added that the particular cause of the divorce may properly enter into the consideration'."

The Chancellor heard the case and was in the position to know the parties and their witnesses and to properly evaluate their testimony. While it may be said that the Chancellor's allowance of alimony was liberal, we do not find an abuse of the discretion vested in him which would authorize this Court to direct a different finding. The allowance made for attorneys' fees was reasonable.

Judgment affirmed on appeal and cross-appeal.