ESTATE OF MORRISON T. O'NAN, DECEASED, MORRISON A. O'NAN, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5803–64.  Filed March 28, 1967.

*James E. Banahan*, for the petitioner.
*Sanford S. Neuman*, for the respondent.

HOYT, *Judge:* This proceeding involves an estate tax deficiency of $46,048.12. The question in issue is whether there should be included in decedent's gross estate the value of certain real estate consisting of farmlands which decedent conveyed to his wife under a property settlement agreement made at the time of the wife's filing of a suit for divorce. If that question is decided affirmatively, there is a further question as to valuation of the properties.

### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly and incorporated herein by this reference.

The decedent, Morrison T. O'Nan, was born on March 26, 1891, and died November 26, 1961, a resident of Springfield, Ky. A Federal estate tax return was filed on behalf of his estate with the district director of internal revenue at Louisville, Ky., June 18, 1962. Decedent was survived by his former wife, Tillie Farrand O'Nan, herein-

after called Tillie, who was born April 14, 1891, and their four children whose names and dates of birth as follows: Ellena O'Nan, October 12, 1915; Sara E. O'Nan, December 24, 1918; Tillie O'Nan Eddleman, June 18, 1921; Morrison A. O'Nan, August 11, 1927.

Morrison A. O'Nan was named executor of decedent's estate by his will which was admitted to probate on December 4, 1961.

Decedent and Tillie were married December 29, 1914, and lived together as man and wife until September 1938, when they separated because of marital differences and difficulties.

Prior to this separation decedent and Tillie lived with their children on one of decedent's farms, known as the O'Nan farm and sometimes referred to as the home place, located about 3 miles east of Springfield. This farm consisted of 3 adjacent tracts containing a total of approximately 400 acres. Two of these tracts had been purchased by decedent in 1919 and the third had been acquired by him after his mother's death in 1936 as his share of her estate and by purchase from the other heirs of their interests therein. At the time of their separation Tillie and the four children moved to a residence in Springfield which decedent had purchased in Tillie's name on March 4, 1937, for $5,500.

On February 19, 1938, long after the O'Nan's marital troubles had begun, decedent had conveyed the home place to Tillie reserving to himself, however, the right to operate and manage the farm and receive the income therefrom for life. He also retained a reversionary interest therein in the event Tillie should predecease him. The deed specified that decedent was to pay the taxes and upkeep on the farm during his lifetime. At this time decedent was 46 years and 11 months old and this property had a fair market value of approximately $35,000.

In 1942 decedent advised Tillie that he wanted a divorce. After considering the matter and discussing it with her eldest daughter, Ellena, Tillie decided that she and the children would require at least $6,000 per year for their support. Ellena conveyed this information to decedent who then made a counter offer to Tillie of $4,000 per year and fee simple title to his two farms subject to his reserved life estate therein. Tillie was not satisfied with this suggested settlement and took no further action at that time. In the fall of 1943 decedent then renewed his demand for a divorce. Tillie and her daughter, Ellena, then went together to consult her lawyer about the divorce and the matter of a settlement. Tillie did not want to accept decedent's proposal. Following a period of further discussion and negotiation, during which time Tillie was represented by counsel, they agreed to obtain a divorce and entered into an agreement dated October 15, 1943, which provided in material part as follows:

This Contract and Agreement made and entered into this day by and between Morrison T. O'Nan, of Springfield, Washington County, Kentucky, party of the

first part; and Mrs. Tillie Farrand O'Nan, of Springfield, Washington County, Kentucky, party of the second part.

WITNESSETH: That whereas unfortunate differences have arisen between the parties of the first and second part, which makes it no longer possible for them to live together as man and wife; and desiring to settle their property rights have contracted among and between themselves, and do hereby agree as follows:

Mrs. Tillie Farrand O'Nan, is to institute a divorce suit in the Washington Circuit Court on the grounds of five years separation.

Mr. Morrison T. O'Nan agrees to pay her alimony in the sum of Four Thousand ($4,000.00) Dollars per year; and agrees to pay her between the period of November 1, 1943 and January 1, 1944, the sum of Six Hundred and Sixty-Six and 67/100 ($666.67) Dollars, and on the 1st day of January and July thereafter, beginning January 1, 1944, he is to pay her the sum of Two Thousand ($2,000.00) Dollars.

It is further agreed that Morrison T. O'Nan will each year kill for her three or more hogs, weighing in the aggregate at lest [sic] Six Hundred (600) pounds. He also agrees that she may come to the farm and receive vegetables, and other food products, and also butter, eggs, chickens and milk therefrom. It is also agreed that in the event Mrs. Tillie Farrand O'Nan, should die before his death, he is to provide reasonable support for any unmarried children.

Mrs. Tillie Farrand O'Nan, owns the residence in Springfield, Kentucky, which she is to keep as her own. Mr. Morrison O'Nan has conveyed to her a farm, which he purchased from Elmer Fenwick, and the O'Nan home place, and reserves to himself the right to operate, the said farms, and receive the profits from same, during his natural life.

It is agreed that the provisions of this Contract may be incorporated in, and as part of the Judgment for Divorce.

On the same date, October 15, 1943, decedent executed a deed to Tillie of the Fenwick farm which he had acquired earlier that year at public auction for $9,709.78, consisting of 208 acres situated about 6 miles north of Springfield. The same deed also conveyed to her the reversionary interest which O'Nan had retained by the 1938 deed to Tillie of the O'Nan farm. However, the October 15, 1943, deed reserved unto the grantor "a life estate in and to all of the said land, with the conwequent [sic] right to supervise, and manage same, and to receive all the profits and income from same. And to pay all of the taxes thereon, during his life time."

A lien was given by the deed on decedent's reserved life estate in the properties to secure the $4,000 per year alimony payments to Tillie and her rights to the meat, vegetables, and dairy products from the farms.

Also on October 15, 1943, in accordance with their agreement that Tillie would sue for divorce, she filed her petition therefor in the Washington Circuit Court (Washington County, Ky.). In the petition Tillie set forth as her grounds that decedent had left home in 1938 and that the parties had been separated for 5 years. She also alleged that the parties had settled their "property differences" per agreement attached to the petition as exhibit No. I, and that "It is agreed between them" that said contract be incorporated as part of the judgment

prayed for. Decedent was served with a summons in this divorce action the same date.

On October 21, 1943, by agreement of the decedent and Tillie, depositions were taken in the divorce proceeding which established Tillie's right to the divorce. Decedent did not contest the action. On this same date the deed dated October 15, 1943, was recorded. In the interim between October 15, 1943, and October 21, 1943, Tillie had not held the deed; it was not effective until October 21, 1943, at the earliest date. On October 26, 1943, the county attorney of Washington County, Ky., filed his answer in the divorce proceeding in accordance with the then Kentucky requirements and practice, in which he stated that he was unable to make defense to the pleadings and proof in the action.

The following day, October 27, 1943, the court entered its judgment and decree granting Tillie a divorce. The court's judgment provided, after quoting in full the property settlement agreement between decedent and Tillie dated October 15, 1943, as follows:

It is further adjudged by the Court, that Morrison T. O'Nan, pay the Plaintiff, Mrs. Tillie Farrand O'Nan on November 1, 1943 the sum of Six Hundred and Sixty-Six and 67/100 ($666.67) Dollars, alimony until January 1, 1944, and thereafter he will pay her the sum of Four Thousand ($4,000.00) Dollars, per year; Two Thousand ($2,000.00) Dollars, on the 1st day of January 1944, and on each and every January 1, thereafter; and Two Thousand ($2,000.00) Dollars, on the 1st day of July, 1944, and on each and every July 1, thereafter.

It is therefore adjudged by the Court that Morrison T. O'Nan, will each year kill and deliver to the said Mrs. Tillie Farrand O'Nan, three or more hogs, weighing in the aggregate at lest [sic] Six Hundred (600) Pounds. She has the right to receive vegetables and food products from the farm, which he is to operate. She will also have the right to receive, butter, eggs, chickens and milk. And should the said Tillie Farrand O'Nan die before the said Morrison T. O'Nan, he is to provide reasonable support for any unmarried children.

It is further adjudged by the Court that Mrs. Tillie Farrand O'Nan, will keep as her own, the residence in Springfield, Kentucky, which was purchased from C. H. Boblitt, and that she is also the owner of the Elmer Fenwick farm, and the O'Nan home place, which defendant has conveyed to her, reserving to himself a life estate, and the right to operate, control and receive the profits from same during his natural life. And that the Fee simple title of said farm belongs to the said Tillie Farrand O'Nan.

It is further adjudged by the Court, that Morrison T. O'Nan retains all of the property which he now owns, other than the property specified in Contract herein.

It is further adjudged by the Court, that the Defendant, pay the cost of this action, including a reasonable attorney's fee, for Plaintiff's attorney.

This case is now stricken from the docket.

At the time of the divorce action and decree decedent was 52 years 6¾ months of age, and the real properties conveyed had a fair market value of $46,000. At that time the only property owned by Tillie, who was 52 years 6 months of age, was the home in Springfield in which she and the four children lived and which had been purchased by decedent in her name in 1937 for $5,500 and possibly a few shares of title

insurance company stock of negligible value. Decedent owned substantial other property and assets, the full value and extent of which are not disclosed by the record.

One of the children of decedent and Tillie, Sara E. O'Nan, was 20 years old when the parents separated; she was frail and in poor health all during childhood and in later life as well. During the years of separation she developed rheumatic fever and diabetes and at the time of divorce in 1943 she was in frail health and unable to work. This condition has continued throughout her lifetime and has required constant medical attention and treatment as well as drugs and medicines. She has never been employed and has made her home with Tillie since 1938 as has her eldest sister, Ellena O'Nan. Ellena was 28 when her parents were divorced; Tillie, the daughter, was 22, and had just finished with her college education; Morrison A. O'Nan, the son, was 16 at the time and a student in high school. All four children were living at home in Springfield with their mother in 1943; young Tillie soon married (the record being unclear as to the exact time), became emancipated and moved away; Morrison lived at home there until early in the 1950's when he served in the Army during the Korean war and married; Ellena and Sara were still living with their mother, Tillie, at time of trial.

From the time of their separation in September of 1938 until the divorce in October of 1943, Tillie drew checks on the O'Nans' joint bank account for general household funds and to support herself and the children. The family had maintained a normal standard of living for a family in their circumstances and after the divorce Tillie continued to provide for herself and the children at home in approximately the same manner. Decedent did not provide otherwise for the children by paying support, allowances, or expenses.

Decedent died testate November 26, 1961. His will was probated in the Washington County Court December 4, 1961. Following is a verbatim copy of the will:

I am of sound mind I wish for my property to be left this way. I want Morrison A. and Sara E. O'Nan to have my big farm of 500 acres and every thing there on it. If Sara E. has no children I want her part of the farm to go back to Morrison A. I want Ellena O'Nan and Tillie Eddleman my daughters to have the tick *treek* farm of 208 acres and every thing there on it. I dont want a public sale I want my cash holdings to be divided *equly* between my four children Morrison A., Ellena, Tillie, Sara I dont want a Court settlement let Morrison take care of everything.

Nov. 15, 1954                                   M. T. O'NAN

Nov. 15, 1954.

I want my Ex wife Tillie Ferrand to be taken care of through this Estate her life time.

M. T. O'NAN

In reporting and computing the value of decedent's estate for Federal estate tax purposes, using date of death (Nov. 26, 1961)

values, the executor of decedent's estate included property and assets of a gross value of $104,476.49, deductions of $12,584.42, a net estate of $91,892.07, and a taxable estate after exemption of $31,892.07. No value was included therein for the 208-acre Fenwick farm or the 400-acre home place. Respondent made the following adjustments and explanation:

### ADJUSTMENTS TO NET ESTATE

Taxable estate as disclosed by return_____ $31,892.07
Additions to value of taxable estate and decreases in deductions:
    Transfers during decedent's life_____ 169,000.00

    Taxable estate as adjusted_____ 200,892.07

### EXPLANATION OF ADJUSTMENT

Transfers during Decedent's Life:
    The value of the following-described property, transferred by the decedent during his lifetime, is includable in the gross estate of decedent under the provisions of sections 2036 and 2043 of the Internal Revenue Code of 1954, and no deduction is allowable for this transfer under the provisions of section 2053 inasmuch as this property was transferred pursuant to an agreement of property settlement between the decedent and his former wife, Tillie Farrand O'Nan. Adjustment to taxable estate is computed as follows:

| | Return | Determined |
|---|---|---|
| 608 acres of land, Washington County, Ky_____ | None | $169,000 |

At the date of decedent's death, November 26, 1961, the 208-acre Fenwick farm had a fair market value of $31,200 and the 400-acre O'Nan home place had a fair market value of $96,000; the two farms together were then worth $127,200.

### OPINION

The principal question in issue is whether the value of the real estate consisting of the O'Nan and Fenwick farms, which decedent transferred to Tillie during his lifetime, reserving to himself a life estate, is includable in his gross estate. A secondary issue is as to date-of-death value of these properties.

Petitioner contends that decedent's transfer of the properties in question to his wife was for an adequate and full consideration in money or money's worth, within the meaning of section 2036(a)[1] of

---

[1] SEC. 2036. TRANSFERS WITH RETAINED LIFE ESTATE.

(a) GENERAL RULE.—The value of the gross estate shall include the value of all property * * * to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

    (1) the possession or enjoyment of, or the right to the income from, the property, or
    (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom.

the 1954 Internal Revenue Code, so that the value of the properties is not includable in the decedent's gross estate under that section. The consideration, petitioner contends, was Tillie's release of her right to support and the divorce decree itself and not the release of her right to dower, curtesy, etc., in decedent's real estate.

Respondent's position is that section 2036 of the Code (all references to Code sections will pertain to the 1954 Code unless otherwise specified) is applicable; that the transfers in question were in consideration for the wife's relinquishment of her inchoate dower or other marital rights, or in satisfaction of decedent's desire that she have the properties after his death. He therefore urges that they were without consideration in money or money's worth, within the meaning of sections 2036(a) and 2043(b). It is not questioned that the value of the transferred properties is includable in decedent's estate, absent consideration for the transfers in money or money's worth.

On brief, petitioner urges that a distinction has been made by the courts and the Commissioner's own rulings between transfers of property involving the release of marital rights incident to a divorce and those made for tax-saving purposes only by a husband and wife living together. Among the cases relied on, including several recently decided in this Court, are *Merrill* v. *Fahs*, 324 U.S. 308 (1945) ; *Harris* v. *Commissioner*, 340 U.S. 106 (1950) ; and *United States* v. *Davis*, 370 U.S. 65 (1962).

This question, in its several aspects, has recently been reviewed at considerable length by this Court in *Estate of Hubert Keller*, 44 T.C. 851 (1965) ; *Estate of Robert Rodger Glen*, 45 T.C. 323 (1966), on appeal (C.A. 9, Aug. 29, 1966) ; and *Estate of Donald M. Nelson*, 47 T.C. 279 (1966). These were all estate tax cases involving husband and wife transfers of properties made incident to divorce or pursuant to settlement agreements incident to divorce. We carefully reviewed the legislative and judicial history of section 2043[2] and related sections of the Code, and applied the announced principles accordingly to the facts disclosed by the records therein.

In the *Keller* case, respondent conceded that the value of the wife's life estate in the transferred property, the only interest transferred to her pursuant to a divorce decree, was excludable from the gross

---

[2] SEC. 2043. TRANSFERS FOR INSUFFICIENT CONSIDERATION.

(a) IN GENERAL.—If any one of the transfers, trusts, interests, rights, or powers enumerated and described in sections 2035 to 2038, inclusive, and section 2041 is made, created, exercised, or relinquished for a consideration in money or money's worth, but is not a bona fide sale for an adequate and full consideration in money or money's worth, there shall be included in the gross estate only the excess of the fair market value at the time of death of the property otherwise to be included on account of such transaction, over the value of the consideration received therefor by the decedent.

(b) MARITAL RIGHTS NOT TREATED AS CONSIDERATION.—For purposes of this chapter, a relinquishment or promised relinquishment of dower or curtesy, or of a statutory estate created in lieu of dower or curtesy, or of other marital rights in the decedent's property or estate, shall not be considered to any extent a consideration "in money or money's worth."

estate under section 2036(a) on the authority of *Harris* v. *Commissioner, supra; Estate of Myles C. Watson*, 20 T.C. 386 (1953), affd. 216 F. 2d 941 (C.A. 2, 1954); and Rev. Rul. 60–160, 1960–1 C.B. 374. We held that the remainder interest in the property transferred to the two adult children was not excludable since the transfer of that interest was not related to the wife's surrender of marital rights in the property under the divorce decree. We said, after pointing out the confusion that has arisen in construing and applying sections 2036(a) and 2043(b):

> *However, it would seem that both a transfer with a retained life estate, and a claim based on a promise or agreement, will be deemed to be supported by an adequate and full consideration if they spring from a divorce decree, insofar as the decree effectively settles the property rights of the parties who are before the court, even though the wife has only marital rights to give up.* But we do not think this "divorce as consideration" theory has yet been extended to provide a consideration for a transfer to third parties, not before the court in the divorce proceeding, simply because the divorce decree requires the transfer. [Emphasis supplied.]

The same view was expressed in the *Glen* case, where we said:

> At first blush this section [sec. 2043(b)] appears to cover the instant case and prohibit the release by Jane Glen of her rights under Scotch law from serving as consideration. However, the proper interpretation and application of section 2043(b) in a case like the instant one requires consideration of all other relevant statutory provisions and a thorough analysis of prior relevant case law and statutory history. As we very recently observed in *Estate of Hubert Keller*, 44 T.C. 851 (1965) section 2043(b) is difficult to apply despite its definite language because of both its legislative history and the treatment of it in court decisions and respondent's rulings.

In *Glen* where the transfer was made prior to divorce and the decree was silent as to said transfer, we held that the wife's relinquishment of her one-third interest to her husband's personal property upon divorce was a consideration in money or money's worth for her interest in the trusts, and to the extent of the value of such one-third interest the trust properties were excludable from the husband's gross estate. We said:

> Based upon all of the above, and particularly upon the statutory history underlying section 2043(b), and our previous holding in *Edward B. McLean, supra*, we conclude that section 2043(b) should be limited in its application to the release of rights which accrue to a *surviving spouse* upon the decedent's death, i.e., dower, curtesy, or similar rights in the property or estate of a deceased spouse. Section 2043(b) is not applicable to the relinquishment of a presently enforceable claim to an outright portion of a spouse's property upon divorce. *Edward B. McLean, supra.*

An exclusion from the gross estate was allowed in the *Nelson* case to the extent of the interest of the wife in a trust to which her husband transferred property under a divorce settlement agreement. The wife's relinquishment of her right to support, which had a value in

excess of the determined value of her interest in the trust at the time of the transfer, was held adequate and full consideration in money or money's worth.

The crucial question here is whether the transfers to the wife were effected in consideration of Tillie's right to support or by the divorce decree, rather than in satisfaction of the wife's relinquishment of her dower, curtesy, or other marital rights in decedent's estate as respondent contends.

The Kentucky statutes and the cases decided by the courts of that State establish the right of a divorced wife to a fair and reasonable share of her husband's property. Following are excerpts from pertinent provisions of the Kentucky Revised Statutes Annotated (KRS):

KRS 392.090 [2133; 2144] Dower barred by divorce or adultery.

(1) Absolute divorce bars all claim of either husband or wife to the property, real and personal, of the other after his or her decease.

KRS 403.060 [2121; 2122; 2123] Disposition of property; restoration of maiden name.

(1) If the wife does not have sufficient estate of her own she may, on a divorce obtained by her, have such allowance out of that of her husband as the court considers equitable; but no such allowance shall divest the husband of the fee simple title to real estate.

(2) Upon final judgment of divorce from the bonds of matrimony, each party shall be restored all the property, not disposed of at the beginning of the action, that he or she obtained from or through the other before or during the marriage and in consideration of the marriage.

KRS 403.065 (C.C. 425) Proceedings for restoration of property.

Every judgment for a divorce from the bond of matrimony shall contain an order restoring any property not disposed of at the commencement of the action, which either party may have obtained, directly or indirectly, from or through the other, during marriage, in consideration or by reason thereof; and any property so obtained, without valuable consideration, shall be deemed to have been obtained by reason of marriage. The proceedings to enforce this order may be by petition of either party, specifying the property which the other has failed to restore; and the court may hear and determine the same in a summary manner, after ten days' notice to the party so failing. * * *

Equitable principles are applied in Kentucky to fix and measure the award to a wife from her husband's property, and such "allowance" from the husband's estate is generally called alimony. It may be a lump sum or award of property in lieu of or in addition to periodic payments. *Whitaker* v. *Whitaker*, 298 Ky. 590, 183 S.W. 2d 623 (1944).

In *Heustis* v. *Heustis*, 346 S.W. 2d 778 (Ky. 1961), the Court of Appeals of Kentucky said:

So the only fact of real significance here is that after 25 years the parties have lost their marriage and are left *to divide, through the means of alimony, their accumulation of property. And the only question is what is fair.*

That a wife who makes the home, raises the children, gives succor and moral support to the husband and aids him in the saving and investment of his money, but who does not directly convert any individual effort or earnings into the form of property, in the event of divorce has no interest in the property accumulated through the husband's earnings during the marriage *is a travesty made tolerable only by the judicial power to correct it in the form of alimony.*

We have heretofore recognized that although there is no rigid formula for establishing the amount, *the approximate equivalent of one-third of the husband's estate is a reasonable basic measure.* Ahrens v. Ahrens, 1950, 313 Ky. 55, 230 S.W. 2d 73. Where the wife has fully performed her share of the responsibilities during the substantial portion of her married life with the husband and has not brought on the divorce by moral delinquency, and the husband is not entirely free of fault, we are of the opinion that alimony should be in an amount not less than one-third of the estate accumulated from the income of the husband during the marriage (as distinct from whatever portion of his estate may have been derived from independent sources), unless of course, she has a sufficient estate of her own or unless there are other unusual circumstances rendering such a division inequitable.

[Emphasis supplied.]

In *Hall* v. *Hall*, 380 S.W. 2d 233 (Ky. 1964), the court ruled that the *Heustis* case did not intend to exclude parental gifts from the husband's estate in determining the "alimony" allowance, and that the entire husband's estate is to be considered in fixing an award to the wife of "alimony" which should also include consideration of monthly payments, a lump sum, or a combination of both. In the case of *James* v. *James*, 248 S.W. 2d 706 (Ky. 1952), it was held that the prospect of inheritance by the husband should be considered in determining the alimony allowance. In *Broida* v. *Broida*, 388 S.W. 2d 617 (Ky. 1965), the court stated that the *Heustis* case does no more than suggest a minimum allowance, the court placing the word *minimum* in italics for emphasis; the court further stated that *Heustis* does not mean the wife cannot be allowed the equivalent of one-third of the entire estate, *or even more if the chancellor in his reasonable discretion sees fit.*

As noted above, the Kentucky statutes specify that divorce absolutely cuts off dower, curtesy, or other marital rights in the property of the former spouse. It therefore becomes necessary to ascertain whether or not the transfers here involved were in consideration of Tillie's release of such rights or of her rights upon divorce to an equitable allowance from her husband's property. In this connection it must first be kept in mind that both Tillie and O'Nan had identical and valid grounds for divorce in Kentucky in October of 1943. Either spouse is entitled to obtain a divorce from the other under KRS 403.020(1)(a) on the ground of 5 consecutive years of separation without cohabitation, and it makes no difference who was to blame for the separation. *Best* v. *Best*, 218 Ky. 648, 291 S.W. 1032 (1927); *Ward* v. *Ward*, 213 Ky. 606, 281 S.W. 801 (1926). It is therefore apparent that the decedent

O'Nan could have obtained a divorce from Tillie in October of 1943 and thereby absolutely eliminated and cut off her dower, curtesy, or other marital rights in his property. The only right that could have been bargained for in the settlement negotiations or obtained by Tillie then or upon divorce was her right to an allowance from decedent's property under KRS 403.060, in such amount as the court might consider equitable.

It is well established in Kentucky that this equitable award is for the wife's comfortable support and maintenance. In the first place, if she has a sufficient estate of her own she is not entitled to any award in the plain words of the statute and this has been interpreted to mean a sufficient separate estate to provide for her comfort and maintenance in the manner to which she has been accustomed. *Smith* v. *Smith*, 297 Ky. 395, 180 S.W. 2d 275 (1944). The fact that property not yet owned by the husband, but only in expectation, is considered in fixing the award (*James* v. *James, supra*), or that the wife is entitled to no award whatever irrespective of the size or nature of her husband's estate if she has a sufficient estate of her own (*Anderson* v. *Anderson*, 392 S.W. 2d 45 (1965) ; *McDonald* v. *McDonald*, 279 Ky. 688, 132 S.W. 2d 49 (1939) ), establishes clearly that in Kentucky the wife negotiating for or obtaining a settlement or divorce exchanges her support rights for whatever is obtained.

In *Willoughby* v. *Willoughby*, 294 S.W. 2d 550 (Ky. 1956), the court held that the allowance to a divorced wife from her husband's estate is "of an amount suitable for her support," such as the court considers equitable. In refusing to allow the wife an allowance computed by the application of the Kentucky statutory provision for dower, the court held that the measuring stick to determine a support award under KRS 403.060 was not only dower rights but also many variables including the character and amount of the husband's estate and the financial condition of the wife. The court said (p. 551) :

The award is not necessarily or always the allowance of a proportionate part of the husband's estate. He may have no estate but may, nevertheless, be required to pay alimony out of current or probable earnings or income. Alimony, as the statute says, is to be determined by the equities of the case. Here the husband does have an estate, and the court in its discretion made an award of alimony in gross, or, as commonly expressed, of a lump sum, which is a proportionate division of the husband's net estate.

In the leading case of Muir v. Muir, 133 Ky. 125, 92 S.W. 314, 317, 4 L.R.A., N.S., 909, the court discusses the theory of alimony as being in lieu of the common law obligation of a husband to support his wife and suggests the idea that her dower interest in her husband's estate is reasonable, although cognizance is taken that alimony must be regulated by all the circumstances. The court regarded $15,000 as the value of the husband's estate upon which the award to the wife should be reckoned and fixed the allowance at $5,000 and "As part of it, she should be given the use of at least one-half of the real estate". See also

Wesley v. Wesley, 181 Ky. 135, 204 S.W. 165. Thus, dower was established as a rule of thumb for the measurement of alimony. Obviously, the rule is subject to many variables, important elements being the character and amount of the husband's estate and the financial condition of the wife. In the Muir case, the husband's conduct was of the grossest sort; and there were other exceptional circumstances, including the probable acquisition of wealth from his father, which justified a liberal allowance.

The Kentucky law is therefore clearly and firmly established that the wife's right to an award from her husband's estate upon divorce is an award for support equitably determined on all of the facts and not an award for dower, curtesy, or other rights she may have in her husband's property or estate during marriage. All Tillie could have bargained for in 1943 was her right in Kentucky to an award for support upon divorce since the decedent could have proceeded to obtain his own divorce had Tillie not done so and thus cut off her claims to or rights in his property as a spouse. KRS 392.090 (2133; 2144) quoted, *supra*. What Tillie gave up here was exactly what was described by the court in *Smith* v. *Smith*, *supra*, "specific performance in respect to the obligation" of O'Nan to support her. Her rights in Kentucky, which were transferred to decedent, were not property interests but rather rights to support and alimony. Cf. *United States* v. *Davis*, *supra* at 70.

Respondent contends that Tillie's support rights were satisfied by allowing her to retain the Springfield house in her name and by decedent's agreement to pay her "alimony" of $4,000 per year plus the various food products from the farms. He concludes that the only right which Tillie could have relinquished to decedent in return for the two farms was her inchoate right to dower, and that this "does not constitute to any extent a 'consideration in money or money's worth.'" Int. Rev. Code of 1954, § 2043(b)." We cannot agree.

The annual payments of $4,000 plus the hogs, vegetables, dairy products, etc., were obviously intended as and in fact were support for the entire O'Nan family, Tillie and the four children then living with her in Springfield. Our findings not only disclose that all four children were living with Tillie at that time, but that three of them continued to do so for years thereafter. At the time of trial, 20 years later, two unmarried daughters still maintained their home there. One of these was a lifelong invalid. We regard the label "alimony" as insignificant and not binding upon us to fix the nature of the annual payment for these purposes in this case in the light of other terms of the agreement and decree and all of the evidence of record. Such payments were for Tillie and the children, not for Tillie alone. *Keith* v. *Keith*, 270 Ky. 655, 110 S.W. 2d 424 (1937). Decedent would have been responsible "to provide reasonable support for any unmarried children" if Tillie had predeceased him under the settlement agreement and divorce decree. In the light of the evidence of record we

can only conclude and hold that decedent's duty to support Tillie was by no means satisfied or discharged by the portions of the divorce settlement and decree referred to. The entire settlement was made and the real estate transfers were effected in consideration of Tillie's right to an equitable share of decedent's estate for her future comfortable maintenance and support under Kentucky law. The happenstance that she wound up as the owner of some of decedent's property does not equate the transaction with a division of property. *United States* v. *Davis, supra* at 71.

We are equally unimpressed with respondent's arguments that the Kentucky divorce court had no power or authority to vary or alter the settlement agreement by its divorce decree. It has long been recognized in Kentucky that settlement agreements between the parties, if fair and made in contemplation of a permanent separation will be upheld. *Whisman* v. *Whisman,* 14 S.W. 2d 1061 (Ky. 1929) ; *Middleton* v. *Middleton,* 207 Ky. 508, 269 S.W. 552 (1925), and the cases cited therein. However, it is clear that the parties in a divorce action cannot by their agreement take away the court's inherent and specifically conferred powers.

The divorce court here not only had power and authority to adjudge and decree an alimony award to Tillie under KRS 403.060(1), but also under the express terms of KRS 403.065 to restore to decedent any property she had previously obtained from him. We conclude that the court had inherent and specific power, authority, and jurisdiction to alter, vary, accept, or reject the settlement agreement tendered to it by Tillie. We agree with petitioner's argument that there are few Kentucky cases discussing such a fundamental proposition because it is obvious as a practical matter that divorce courts are not going to freely and wantonly change or vary settlement agreements reached by the parties just to prove their undoubted authority. The fact that decedent and Tillie after lengthy arm's-length bargaining and negotiation had agreed upon a settlement or that decedent had deeded the properties in question to Tillie prior to entry of the decree has no real significance. The divorce court obviously could have varied the agreement to restore to decedent all of the real property which he had previously deeded to her and make an equitable award to Tillie from O'Nan's total property and estate. The fact that it did not do so and that the agreement of the parties was set forth in the decree and the rights of the parties were adjudged accordingly does not indicate at all that the court was powerless to do otherwise.

Here, instead of ignoring the arrangements worked out by the parties and applying its own equitable thumb, the court very properly accepted the negotiated agreement of the parties, incorporating it verbatim in the decree. The court then adjudged the rights and in-

terests of the parties, adding however two additional matters not covered by the agreement: (1) That decedent keep and retain as his all of the other property he then owned (which our findings indicate was substantial), and (2) that decedent pay costs and Tillie's attorney's fee.[3] As in *Pegram* v. *Pegram*, 310 Ky. 86, 219 S.W. 2d 772 (1949), the contractual agreement became merged into the judgment of the court and the transfers were then founded upon the divorce decree, sprang therefrom, and became final thereby.

We conclude and hold that until the divorce decree was entered there was no final settlement nor were effective and binding transfers previously made. Tillie's rights and the decedent's duties were then determined and fixed.

As to the power of the Kentucky courts in the settlement of property rights in divorce proceedings, it is stated in *Pegram* v. *Pegram*, *supra*, that:

As a general rule the exercise of the power of the Court to modify a decree for alimony is not affected by the fact that it is based upon an agreement entered into by the parties, *for the agreement became merged into the judgment and lost its contractual nature.* 27 C.J.S., Divorce, Sec. 238 d; Hoskins v. Hoskins, 201 Ky. 208; 256 S.W. 1; McGuffin v. Chapman, 212 Ky. 579, 279 S.W. 987. [Emphasis supplied.]

＊　　　＊　　　＊　　　＊　　　＊　　　＊　　　＊

Separation agreements are upheld when untainted by fraud, undue influence or duress if the terms are fair, reasonable and equitable, considering the circumstances of the parties at the time they were made. Sparks v. Sparks, 215 Ky. 508, 28 S.W. 1111; Whisman v. Whisman, 228 Ky. 277, 14 S.W. 2d 1061. But such agreements will be closely scrutinized, and the court will not suffer the wife to be over-reached. It will not sustain a contract that is unfair or prejudicial to her when obtained while she is under her husband's domination. Parsons v. Parsons, 23 Ky. Law Rep. 223, 62 S.W. 719; Kline v. Kline, 105 S.W. 1189, 32 Ky. Law Rep. 492; Keach v. Keach, 217 Ky. 723, 290 S.W. 708; Clark v. Clark 301 Ky. 682, 192 S.W. 2d 968; Corrigan v. Corrigan, 305 Ky. 695, 205 S.W. 2d 495.

See also *Coggins* v. *Coggins*, 289 Ky. 570, 159 S.W. 2d 4 (1942).

In *Boehmer* v. *Boehmer*, 259 Ky. 69, 82 S.W. 199 (1935), the power of the court to alter the property settlement carried into the divorce decree was analyzed as follows:

The rule that, where the parties during the pendency of an action for divorce enter into an agreement settling their property rights and providing for the payment of alimony either in a lump sum or monthly payments, and a judgment is rendered carrying the agreement into effect, the court is without power

---

[3] Respondent's argument that the court could not award fee simple title to the land to Tillie because of the restriction in KRS 403.060(1) is neither convincing nor persuasive. The granting of title by deed could be considered as part of the equitable award, and even if the court had, sua sponte, awarded such title, such an order divesting decedent of fee simple title would be merely voidable, not void. *Dix* v. *Dix*, 310 Ky. 818, 222 S.W. 2d 839 (1949). A contract for conveyance of such title followed by a decree approving or ordering the same would bar the husband from subsequent recovery of title. *Reese* v. *Greenlea*, 308 Ky. 275, 214 S.W. 2d 262 (1948).

after the expiration of the term to revise the alimony because of changed finances, Renick v. Renick, 247 Ky. 628, 57 S.W. 2d 663, is subject to two exceptions: (1) Where the agreement provides for modification, Fisher v. Fisher, 237 Ky. 823, 36 S.W. 2d 635; (2) Where the court retains control of the action, Parsons v. Parsons, 80 S.W. 1187, 26 Ky. Law Rep. 256.

We conclude that the divorce court had power to decree a settlement of all property rights between the parties and to vary the terms of the prior agreement if it saw fit to do so. Therefore, petitioner's reliance on *Harris* v. *Commissioner*, *supra*, puts him on sound ground here. As we observed in the *Glen* case, *Harris* stands for the principle that where an agreement settling marital property rights is incorporated into the divorce decree there is then deemed to be consideration for the transfers to the wife under the agreement. Once the decree issues, transfers made thereafter are not voluntary pursuant to the promise or agreement of the parties, but rather pursuant to judicial decree. We can see no valid distinction between transfers *thereafter* and *before* under the circumstances of this case. The same rule applies because the transfers were conditional upon the decree which the parties agreed would be obtained and which followed almost immediately as contemplated; the Kentucky court was not bound to accept the provisions of the agreement but free to order division and restoration to achieve an equitable result. Had O'Nan died after the decree and before he had transferred the farms to Tillie, her claim under the judgment would have been deductible for estate tax purposes. *Commissioner* v. *Maresi*, 156 F. 2d 929 (C.A. 2, 1946), affirming 6 T.C. 582 (1946); E.T. 19, 1946-2 C.B. 166; Rev. Rul. 60-160, 1960-1 C.B. 374.

It is also clear that if O'Nan had effected the transfers outright and the respondent had asserted a gift tax, no gift tax liability would be found. In *Edmund C. Converse*, 5 T.C. 1014 (1945), the husband entered into an agreement to pay his wife a fixed sum monthly for her support. At trial he sought a lump-sum settlement. "The parties agreed upon a settlement in the amount of $625,000, and the Court decreed that the petitioner pay his wife $625,000 in cash in lieu of the monthly payments * * *." We followed our earlier opinion in *Herbert Jones*, 1 T.C. 1207 (1943), and held that no taxable gift was made. On appeal the Court of Appeals for the Second Circuit affirmed, *Commissioner* v. *Converse*, 163 F. 2d 131 (C.A. 2, 1947), making the following observations and analysis:

That judgment then became enforceable and was a debt respondent owed. Had he died before he paid it, it would not only have been collectible out of his estate but, what is even more significant for present purposes, it would, when paid, have been a deductible claim for estate tax purposes. Commissioner v. Maresi, 2 Cir., 156 F. 2d 929. The underlying reason for taxing as gifts transfers made only in consideration for the release of marital rights in accordance with antenuptial agreements, as shown by the Wemyss and Merrill cases,

is that the estate and gift tax statutes are in pari materia. Sanford's Estate v. Commissioner, 308 U.S. 39, 60 S. Ct. 51, 84 L. Ed. 20. Where, as here, there was the discharge of a money judgment which, had it remained unpaid until it became a debt against the respondent's estate, would have been allowed as a deductible claim in computing an estate tax, the transfer which discharged that debt during the respondent's life is not taxable as a gift. *On the contrary it was the payment of a liquidated debt created by the judgment and the discharge thereby of the respondent's obligation to pay that debt was an adequate and full consideration in money or money's worth for the transfer.* [Emphasis supplied.]

While it is true that even respondent has long recognized that a release of support rights constitutes a money's-worth consideration and we have concluded here that the transfers in issue were obtained in exchange for Tillie's rights to support, the only right she had in Kentucky upon divorce, we are unable on the evidence before us to fix the value of those rights. We do not mean to imply that there must be a precise dollar-for-dollar matching of consideration paid with the value of the transferred property in order to conclude that a full and adequate consideration was furnished. See *Estate of Donald M. Nelson, supra.* However, we cannot, as in *Nelson*, say here what Tillie's support rights were worth as of October 27, 1943.[4]

If we were here concerned with the income tax consequences of the transfer to decedent in the year of the settlement, *United States* v. *Davis, supra*, would dictate the conclusion that the release of Tillie's inchoate marital rights, the same under the State law there involved as under the Kentucky law here, were equal in value to the property for which they were exchanged. What the Supreme Court there said describes the situation here:

It must be assumed, we think, that the parties acted at arm's length and that they judged the marital rights to be equal in value to the property for which they were exchanged. There was no evidence to the contrary here. Absent a readily ascertainable value it is accepted practice where property is exchanged to hold, as did the Court of Claims in Philadelphia Park Amusement Co. v. United States, 126 F. Supp. 184, 189, 130 Ct. Cl. 166, 172 (1954), that the values "of the two properties exchanged in an arms-length transaction are either equal in fact or are presumed to be equal."

We believe that this method of evaluating interests such as are here involved is particularly valid and should be applied under the facts of this case. There was long-standing marital discord, followed by 5 years of separation; the parties dealt at arm's length and negotiated over a considerable period of time before reaching a settlement agreement; the reserved life interests (burdened with a lien to secure Tillie's annual payments and rights to farm products) as well as Tillie's remainder interests in the two farms were such that no readily

---

[4] Respondent determined and conceded in *Estate of Donald M. Nelson*, 47 T.C. 279 (1966), that the value of the wife's support rights at the time of transfer was "consideration in money or money's worth received by decedent." Likewise in *Commissioner* v. *Converse*, 163 F. 2d 131 (C.A. 2, 1947), he conceded that the portion of the transfer which satisfied the wife's right of support was supported by consideration.

ascertainable value of the properties exchanged can be attributed. We believe that here, too, on the record presented it should be concluded that the value of the rights surrendered by Tillie can be measured by and equated with the value of the property rights transferred to her by decedent so that full and adequate consideration in money or money's worth was provided for the transfer. There is certainly no hint or suggestion in this record that any donation or gift was intended or effected. The parties certainly judged that the rights given up by Tillie were equal in value to what she received from decedent. There was full consideration for the transfer.

We also conclude and hold that even without evidence to afford a yardstick to measure the consideration or without applying the rationale of *United States* v. *Davis, supra,* to equate the values of the properties exchanged, the exclusionary condition of section 2036(a) has been met with respect to the remainder interests in the two farms transferred to Tillie. We need not measure because here the divorce court had power to decree a settlement of all property rights in an equitable manner, to vary the terms of the prior agreement or to accept them and to restore to the decedent any and all property Tillie had obtained from him, including the interests in the farms. The court ratified and approved the agreement in every detail and adjudged the respective rights of the parties in all of their property accordingly. The transfers then became effective and final; they were founded upon the divorce decree and were therefore supported by an adequate and full consideration in money or money's worth. *Harris* v. *Commissioner, supra; Estate of Hubert Keller, supra; Estate of Myles C. Watson,* 20 T.C. 386 (1953), affd. 216 F. 2d 941 (C.A. 2, 1954), acq. 1958-1 C.B. 6; E.T. 19, *supra;* Rev. Rul. 60–160, *supra.*

In the light of the foregoing, the respondent's determination cannot be sustained and the principal issue is decided for petitioner. It is not therefore necessary for us to discuss the secondary valuation issue.

*Decision will be entered under Rule 50.*