**Helen HEUSTIS, Appellant,**

v.

**Raymond G. HEUSTIS, Appellee.**

Court of Appeals of Kentucky.

May 5, 1961.

Rehearing Denied June 23, 1961.

Francis E. Bauman, Wallis H. Manske, Louisville, for appellant.

Joseph P. Karem, Karem & Karem, Louisville, for appellee.

PALMORE, Judge.

The appellant, Helen Heustis, brought this action against her husband, Raymond Heustis, for a divorce on the ground of cruel and inhuman treatment. She demanded alimony, settlement of property rights, and custody of a 14-year old son, their only child. The husband counterclaimed for a divorce on the same ground and contested all of the wife's demands except as to custody of the son.

After preliminary jousting on the matter of maintenance pendente lite the main controversy was heard by a trial commissioner, who recommended that the wife be awarded a divorce; $35,000 alimony secured by a lien against all property of the parties; a car; the furniture in the home; and $125 per month for support of the son until his majority, marriage or emancipation. On a review of the evidence the chancellor disagreed with the commissioner's report and awarded the divorce to the husband, fixed alimony at $125 per month so long as appellant remains unmarried (and subject to further order of the court) instead of the lump sum of $35,000 as recommended, and adjudged that each party restore all property obtained from or through the other by virtue of the marriage. The judgment followed the commissioner's recommendation of $125 per month for support of the son, subject to further order of the court.

As most if not all of the property of the parties evidently was acquired and accumulated from the earnings of the husband it may be assumed that the wife's only recovery, unless otherwise agreed, is by way of alimony. The questions we have to consider on this appeal are whether the amount awarded by the trial court was adequate and, if not, what is the amount of alimony to which she is reasonably entitled under the evidence.

They married in 1932 when she was 16 and he about 10 years older. He had two daughters, aged 4 and 7, by a former marriage. It was in the depths of the depression, and neither party had any assets of substance. He was running an around-the-clock tire business at 1632 West Market in Louisville, and for a time they lived in two rooms overhead, later moving to a 5-room apartment next door. To some extent at least, Helen assisted in the business. For one 5-year period she operated a beauty shop, ending in 1943 when she became pregnant with the son. She made the clothes for herself and the little girls.

Raymond worked hard, 16 hours a day, and they saved nickles, dimes and pennies until they had $100 to pay down on the property at 1634 West Market, which they now own and where the tire business is located. Helen, a Protestant, raised the little girls in the Catholic church, that having been Raymond's faith. He frankly acknowledges his admiration for Helen in the rearing of his daughters.

Fortune responded kindly to their efforts. As they prospered they bought and moved into other and better quarters, first in the west end of Louisville and then to the east, finally building a new home on Blankenbaker Lane, which Raymond referred to in his testimony as a "fashionable" neighborhood. According to him, all of these moves were made at her instance, and he acquiesced in order to make her happy. She aspired to higher social position, while he professed not to care very much. For 20 years or more they were entirely happy. But with life on Winifred Avenue and Blankenbaker Lane, boat club parties, liquor and beer, and the other familiar concomitants of affluence, aggravated by Helen's going through the change of life, things began to sour, got bad and then worse, and wound up on what counsel calls the legal operating table.

■ It would serve no good purpose to dissect the tragedy further. The happy marriage of this man and woman was destroyed by sociological forces they did not apprehend and were unable to solve. In such cases the offenses of the one are so often reactions to the irritations and inadequacies of the other that a nice apportionment of "fault" can be no more than a pretense. Except in flagrant instances fault is not a very sound basis for determining alimony anyway, and in the case of Coleman v. Coleman, Ky.1954, 269 S.W.2d 730, this court clearly and cleanly departed from the theory that it is. See also Patterson v. Patterson, Ky.1959, 323 S.W.2d 862. So the only fact of real significance here is that after 25 years the par-

ties have lost their marriage and are left to divide, through the means of alimony, their accumulation of property. And the only question is what is fair.

That a wife who makes the home, raises the children, gives succor and moral support to the husband and aids him in the saving and investment of his money, but who does not directly convert any individual effort or earnings into the form of property, in the event of divorce has no interest in the property accumulated through the husband's earnings during the marriage is a travesty made tolerable only by the judicial power to correct it in the form of alimony.

 We have heretofore recognized that although there is no rigid formula for establishing the amount, the approximate equivalent of one-third of the husband's estate is a reasonable basic measure. Ahrens v. Ahrens, 1950, 313 Ky. 55, 230 S.W. 2d 73. Where the wife has fully performed her share of the responsibilities during the substantial portion of her married life with the husband and has not brought on the divorce by moral delinquency, and the husband is not entirely free of fault, we are of the opinion that alimony should be in an amount not less than one-third of the estate accumulated from the income of the husband during the marriage (as distinct from whatever portion of his estate may have been derived from independent sources), unless, of course, she has a sufficient estate of her own or unless there are other unusual circumstances rendering such a division inequitable.

In this case the parties have six pieces of real estate, the tire business, automobiles, furniture, and other miscellaneous assets. Helen has only $400 in her own right. A certified public accountant prepared a balance sheet showing their net worth at $106,000. This figure is considerably higher when market values (as to the real estate in particular) are substituted for book values. On remand of the case the trial court will ascertain the fair value of the total net estate as of the time the action commenced and fix the amount of alimony at not less than one-third.

Lump sum settlements are favored where the husband has sufficient estate to insure payment. Yonts v. Yonts, Ky.1959, 329 S.W.2d 209, 210. Raymond's taxable income in 1956 was approximately $20,000, of which $6,000 represented earnings from investment property. Alimony will be awarded in a lump sum, secured by adequate lien and payable under such reasonable terms as the trial court may adjudge. Suitable adjustment in appellant's attorney fee may be likewise adjudged.

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.