**Beatrice S. GOLDSTEIN, Appellant,**

v.

**Jacob I. GOLDSTEIN, Appellee.**

Court of Appeals of Kentucky.

March 20, 1964.

---

S. J. Stallings, Louisville, for appellant.

Joseph J. Kaplan, Louisville, for appellee.

PALMORE, Judge.

This is a divorce case in which the appeal is confined to the matter of property rights and alimony. The parties, Beatrice and J. I. Goldstein, were married in 1942 and have two daughters, now about 19 and 17 years old, whose custody remains with the mother, Beatrice. Under the terms of the judgment J. I. is to pay $125 per month for the support of each of the children (totalling $250).

At the time of the marriage J. I. was in pharmacy school and Beatrice was employed. For several years following his graduation J. I. worked as a registered pharmacist and for a time conducted an unsuccessful business venture of his own. Late in 1951 he leased a building and, with the assistance of his wife, embarked upon what soon became a successful retail drug store business. Both of them worked long and hard in the development and operation of this enterprise and shared in the managerial duties on much the same as a partnership basis. Although the major portion of the original equity capital represented money inherited by J. I. from his father, the stock in the drug store corporation eventually was issued to the parties in equal shares.

At the conclusion of the testimony the chancellor made a factual finding, based on competent and sufficient evidence, that the net worth of the drug store business, as a going concern, was $45,000.[1] The other principal asset in controversy is the residence of the parties, which at the time of trial had a reasonable market value of $37,500 and was subject to a mortgage debt of $21,186. J. I. had six life insurance policies against which he had borrowed the full cash surrender value. His personal debts amounted to $13,867[2] excluding the costs of this action.[3]

Except for the original investment in the drug store, practically all of their accumulated estate is fairly attributable to the joint efforts of J. I. and Beatrice in the operation of the business.

Because the major substance of the original investment was provided by J. I. and was the main root from which grew the equities in both the drug store and the home, the chancellor apportioned the property rights 85% to J. I. and 15% to Beatrice. He then awarded to Beatrice as alimony the

---

1. Adjusted to market value from a book value of about $13,000.

2. For several years he had suffered a manic depressive disorder, requiring frequent and expensive hospitalization.

3. Deduction of the expenses of the litigation in arriving at the net estate to be divided would result indirectly in charging them partially to the wife.

equivalent of ⅓ of J. I's remaining net worth. The latter figure being roughly approximate to J. I.'s 85% of the equity in the home, it was decreed that she take his interest in the home in lieu of cash. Each party was given one of their two automobiles, and Beatrice was given the home furnishings. Omitting this miscellaneous personal property, the result on paper is. as follows:

| Assets and Liabilities | | J.I. | Beatrice |
|---|---|---|---|
| Business | $45,000 | $38,250 | $6,750 |
| Residence (equity) | 16,314 | 13,867 | 2,447 |
| Insurance | 4,272 | 4,272 | |
| Totals | 65,586 | 56,389 | 9,197 |
| Debts | 13,985 | 13,985 | |
| Net estate | 51,601 | 42,404[4] | |
| Alimony | | 13,867 | 13,867 |
| Ultimate division | | 28,637 | 23,064 |

———◆———

Beatrice's contention is that she was entitled in her own right to 50% of the drug store stock and 50% of the equity in the home and should have been awarded alimony equivalent to 50% of J. I.'s net estate then remaining. Such a division would. result about as follows:[5]

| Assets and Liabilities | | J.I. | Beatrice |
|---|---|---|---|
| Business | $45,000 | $22,500 | $22,500 |
| Residence | 16,314 | 8,157 | 8,157 |
| Insurance | 4,272 | 4,272 | |
| Totals | 65,586 | 34,929 | 30,657 |
| Debts | 13,985 | 13,985 | |
| Net estate | 51,601 | 20,944 | |
| Alimony | | 10,472 | 10,472 |
| Ultimate division | | 10,472 | 41,129 |

———◆———

■ When a divorce controversy involves a substantial amount of property, alimony cannot properly be determined without reference to the property settlement. This is made so by the statute, KRS 403.060(1), which allows alimony only if the wife does not have "sufficient estate" of her own, and limits the allowance to an "equitable" amount. In Heustis v. Heustis, Ky., 346 S.W.2d 778, 780 (1961), we said that a woman whose opportunity to earn an estate of her own has been sacrificed in favor of a career at home as a wife and mother ought to have alimony in an amount no less than one-third of the estate accumulated from the husband's income during the marriage. That, however, was a case in which the wife had no legal interest or restorable rights in the property, and it is not a dispositive precedent in this proceeding.

Passing for a moment the question of what share of the property should or could. have been apportioned to Beatrice in recognition of her direct contribution to its ac-

4. A $1,000 mathematical error led the chancellor to a figure of $41,404.

5. Our analysis.

cumulation, the first concern is whether the over-all award in her favor was adequate.

Several decisions are cited in which this court has approved or directed equal divisions of property. In only one of them, however, does it appear from the opinion that the aggregate amount awarded by way of alimony and property settlement exceeded 50% of what the parties had. That was Cotton v. Cotton, 306 Ky. 826, 209 S.W.2d 474 (1948), in which the estate to be divided was but $1200 and alimony was fixed at $10 per month. Tutt v. Tutt, 304 Ky. 480, 200 S.W.2d 924 (1947), and Powers v. Powers, 307 Ky. 475, 211 S.W.2d 687 (1948), dealt only with property divisions, without mention of alimony. In Shofner v. Shofner, 310 Ky. 869, 222 S.W.2d 933 (1949), the wife was allowed lump sum alimony equivalent to one-half the property, which was retained by the husband. Lockard v. Lockard, 305 Ky. 656, 205 S.W.2d 317 (1947), was similar in that the wife, while retaining her interest in property held jointly, was given alimony equal to half the value of property held in the husband's name; hence the end result was an even split.

We do not mean to say that a wife can never be entitled to alimony in addition to an equal division of jointly accumulated property. There can be no immutable rule in that respect. But under the facts of this case, considering the nature and size of the estate to be divided—what Beatrice will have and what J. I. must have in order to keep his business alive and meet his obligations—we are of the opinion that equity does not require more than a 50% division unless Beatrice's rightful interest in the property exceeds that amount.

■ The original investment of J. I. and Beatrice in the drug store was less than $25,000. The books kept by their accountant show that $19,900 of this equity capital was cash inherited by J. I. from his father. According to Beatrice, the correct figure for the inheritance was $14,000 [6] and was depleted to $10,000 or $12,000 by withdrawals for living expenses during the early days of the business. There is no doubt, however, that $14,000 in cash was paid in from that source, and that of all the rest of the original capital contribution—an automobile, cash borrowed, and the proceeds of certain bonds—no more than $1,700 [7] is directly and separately traceable to Beatrice in her individual right. It is true that on several occasions thereafter further money was borrowed on joint notes and advanced to the business, and that all such advances as well as the original investment have been "returned" by the corporation in the form of salaries and other withdrawals, but it cannot be said, as Beatrice's argument suggests, that J. I.'s inheritance money has been repaid to him in the sense that the net worth today represents accumulated earnings to the exclusion of original capital and surplus. In the absence of evidence to the contrary, it would ordinarily be presumed, we believe, that funds withdrawn by the members of a corporation are charged first to the earnings, next to the surplus and lastly to the capital stock, and that the original investment is intended to be left intact unless depleted by withdrawals declared in the form of dividends. Therefore, if in the ups and downs of business the equity capital becomes depleted, as it may have been from time to time in this case, subsequent earnings replace it without altering its original status.

Aside from the initial investment, J. I.'s contribution to the success of the drug store can hardly be said to have been less than Beatrice's, despite the occasional loss of business in consequence of his personality problems and illnesses. We therefore hold that by reason of his greater contribution in the beginning, his was the greater inter-

6. It appears, for example, that $3,000 of the $19,900 listed as having come from the father's estate probably was money borrowed on J. I.'s life insurance.

7. And the accountant listed this item at $742.25.

est in the business when they came to a parting of the ways.

The chancellor fixed the interest of Beatrice at 15%. From the standpoint of restoration alone, it is our opinion that this was an excessive return to J. I. Nevertheless, the matter of ultimate importance is the over-all division, including both property settlement and alimony. When it is considered that Beatrice was given the home furnishings (which were not valued in the evidence but presumably are adequate and suitable to oufit a $37,500 home) her award approximates half the estate, and we cannot say that it was inadequate as to amount. We are, however, convinced that the manner in which the judgment directed the division to be accomplished was clearly unfair to her, and thus clearly erroneous.

■ Accepting the valuation of the drug store as a going business at $45,000, it is quite a different thing to say that a minority share of its capital stock has a proportionate value. A small business being very much like a cow, not divisible in kind, it was necessary to give control of the store to one or the other of the parties. The chancellor gave it to J. I., and in that we concur. But 15% of the stock in a business run by someone with whom the minority shareholder is incompatible and at odds is a thing of dubious value if indeed it has any value at all. It cannot be eaten and ordinarily it cannot be sold. Whether it bears dividends is largely subject to the will of the controlling party. We feel therefore that instead of leaving Beatrice an interest in the corporation the judgment should have directed the payment of its equivalent in money, either in a lump sum or installments secured by a pledge of J. I.'s stock.

■ According to our analysis, it was the chancellor's intention to award Beatrice the equivalent of $23,064 out of the home and the drug store. His findings specifically recognized that she probably would not be able to maintain the home and should

sell it. If in so doing she is required to pay a broker's commission, the intended amount of her award will be reduced. Therefore, upon remand of the case the judgment should be modified to provide that if the house has been sold, or is sold within some specified reasonable time in the future, the broker's commission, if any, incurred by her in that connection be reimbursed by J. I. As in the case of the $6,750 payment in lieu of stock, the time and terms of such reimbursement shall be within the discretion of the chancellor.

The judgment is affirmed in part and reversed in part with directions that it be modified in accordance with this opinion.