Theodore Thelmer COLLEY, Appellant,

v.

Helen Barrs COLLEY, Appellee.

Court of Appeals of Kentucky.

Nov. 27, 1970.

Herman G. Dotson, Pikeville, for appellant.

Edward R. Hays, Pikeville, for appellee.

REED, Judge.

This is an action involving divorce and alimony. Theodore Thelmer Colley, appellant, sued his wife, Helen Barrs Colley, for a judgment of absolute divorce. She counterclaimed for an absolute divorce from him, for custody of their infant child and for alimony. The trial judge awarded the wife an absolute divorce; awarded her custody of the infant as the husband had agreed; awarded the wife an undivided one-half interest in the residence of the parties, the record title to which was in the joint names of the husband and wife, the wife and infant daughter had the right to occupy it until the child attained her majority, completed college, or was emancipated; adjudged that the husband pay $150 a month for support of the child and pay his wife $48,960 lump-sum alimony in periodic payments or in a gross sum as the husband might elect. The husband appeals on the ground that the total allowance to the wife is excessive. We have concluded that the determination of the husband's net worth made by the trial judge is unauthorized by the evidence; hence, under existing law, the judgment must be reversed and the cause remanded for a redetermination on this issue. We have also concluded that the time has arrived to correct, clarify, and restate the law in this jurisdiction applicable to the principal problems presented in the instant case.

The husband and wife are both 43 years old. They were married about 22 years. Two children were born as a result of the marriage. The older child, a boy, had reached his majority at the time of the divorce; he is a sophomore in college and lives with his father. The younger child is a nine-year-old girl who lives with her mother and attends elementary school.

The husband is the elected Tax Commissioner of Pike County. He had been active in several business ventures prior to his election and has retained his interests in them. These business ventures are mainly in the form of small closely held corporations in some of which he owns a majority stock interest, while in others he holds a minority stock ownership. He receives monthly income from salaries paid by reason of his public office, and his service as officer of a concrete block concern in which he is majority stockholder; he also receives fees for advising other governmental taxing units. His monthly gross earnings amount to $1300.

The wife is a schoolteacher and has been so employed for 18 years of the 22 years of marriage. She now earns take-home pay in the amount of $461.20 per month. The parties agree that her earnings during the marriage amounted to about $38,991.78, all of which had been contributed to the household. Neither the husband nor the wife had any net worth at the time of marriage.

The parties agree that the real property on which their residence is located is worth $40,000. The husband's mother loaned them $27,000 which was used in construction of the residence. She cancelled $12,000 of this debt as a gift to both of them. The husband frankly said that he expected his mother to cancel the remaining debt of $15,000 as an additional gift to him. The wife concedes that none of her separate earnings are directly traceable to purchase of the residence property. Although the husband wants his wife to have the residence for her use, he insists that title

to the property must be restored to him so that he is deemed the owner in fee simple of the property.

Without objection, the husband introduced evidence in the form of income tax returns, balance sheets, and financial statements prepared by certified public accountants to establish the fair market value of his stock interests in the eight business ventures in which he was interested. These exhibits as supplemented by his testimony demonstrate that his net worth, if his interest in the residence property is one-half only, is approximately $75,000. If he is deemed owner of the home in fee simple, the evidence demonstrates his net worth at about $95,000. Although the wife sought by cross-examination to question the accuracy of the exhibits, she neither suggested different valuation amounts by that cross-examination nor did she introduce any evidence that contradicted the valuation evidence the husband introduced; the record simply does not contain any valuation evidence except that introduced by the husband.

The trial judge, after assigning $20,000 as the value of the husband's one-half interest in the residence property, determined that the husband's net worth was $148,800. The only justification for that determination is this statement in the trial court's findings of fact and conclusions of law:

"The court takes judicial knowledge of all of the property owned by the corporations and is familiar with the location and value of those properties to the extent that it is the opinion of the court that the financial statements and the values fixed in the tax returns are not adequately shown."

The doctrine of judicial notice is confined to matters of common knowledge. It is restricted to what a judge may properly know in his judicial capacity; a judge is not authorized to make his individual knowledge of a fact not generally known

the basis of his action. 31 C.J.S. Evidence § 11, p. 832.

Although judicial notice will be taken of matters of common knowledge relating to the value of property, and despite common knowledge that book values assigned to corporate assets may not be reliable, courts cannot assume to know the actual value of specific property; the trial judge was not authorized to fix the market value of the husband's corporate interests by means of the judge's private knowledge. 31A C.J.S. Evidence § 101, p. 151. The determination must be made on the basis of the evidence.

No argument is made that the divorce was not properly granted to the wife. Therefore, the remand is confined to a redetermination of the proper resolution of the financial rights and obligations of the parties to each other based upon the proposition that the wife properly procured a divorce from the husband. We have concluded that we should reconsider the contradictory, confusing, and unrealistic state of our case law in this field as it has painfully developed. We propose to redefine the guidelines for the trial bench and the practicing bar to follow.

A complete survey of our case law in this troublesome area would extend this opinion beyond all tolerable limits and achieve nothing more in pointing up the inconsistent, fiction-ridden, and unsatisfactory character of the various pronouncements when the whole panorama can be as accurately viewed by a consideration of the discussions in the several opinions rendered in four of our relatively recent cases: Heustis v. Heustis, Ky., 346 S.W.2d 778 (1961); Goldstein v. Goldstein, Ky., 377 S.W.2d 52 (1964); Cooke v. Cooke, Ky., 449 S.W.2d 216 (1969); and Reed v. Reed, Ky., 457 S.W.2d 4 (1969).

When the varying views expressed in those opinions are analyzed as in part statutory construction and in part development of common law principles, the clear conclusion is readily evident that legal

fiction has continuously been resorted in order to accomplish what is conceived to be a just result in an individual case.

Two statutes have been the sources of the difficulty. KRS 403.060(1) provides that if a wife does not have sufficient estate of her own, she may, on a divorce obtained by her, have such allowances out of that of her husband as the court considers equitable. The dissenting opinion in the Reed case traces the historical background of this legislative authorization for the granting of alimony. This authorization is limited to those situations where the wife: (a) does not have sufficient estate of her own and (b) is sufficiently free from fault to warrant a judicial finding that she is entitled to a divorce. The amount she is to receive is what the trial court reasonably finds is "equitable."

KRS 403.065 states that every judgment for absolute divorce shall contain an order that each party shall restore to the other any property not disposed of at the commencement of the action, "which either party may have obtained, directly or indirectly, from or through the other, during marriage, in consideration or by reason thereof; and any property so obtained, without valuable consideration, shall be deemed to have been obtained by reason of marriage." We will hereafter refer to KRS 403.060(1) as the alimony statute, and to KRS 403.065 as the restoration of property statute.

The dissenting opinion in Reed graphically illustrates the judicial repeal of part of the alimony statute in a long line of cases. What is not dealt with, however, is the narrow interpretation and over-extension of the restoration of property statute that coincided with the highly vulnerable interpretation of the alimony statute.

■■■ The same historical background which militates against our present judicial interpretation of the alimony statute also demonstrates that our construction of the restoration of property statute is as impermissibly narrow and overextended as our construction of the alimony statute is overexpansive and not warranted by the statutory language. At common law permanent alimony was generally unknown. On the other hand, the property of the wife for most important considerations was considered the property of the husband. See Madden on Personal and Domestic Relations (1931), Sections 32, 33, and 34.

■■ Both the alimony statute and the restoration of property statute represent attempts to ameliorate the harsh results of the common law as it existed in former times. The common law in those times regarded the legal status of women as equivalent to the status of chattels, and it ascribed a kind of mystique to the ownership of land as distinguished from ownership of other types of property. Thus, the restoration of property statute was simply designed and expressed to require that each spouse return gifts that were received from the other spouse or his family during marriage. Gifts made because of the existence of the marriage are restorable. The property each owned at the time of marriage and property acquired by inheritance or by gifts from nonspouse-related third parties during the marriage are to be regarded as the sole property of the spouse who so inherited or received them.

Our case law, however, influenced by a fondness for the common law mystique actually overextended the statute into coverage of property acquired by the joint efforts of both spouses during marriage. This resulted in the unwarranted and unintended construction which is represented in the rule that even if the wife has contributed her separate earnings towards general family expenses or her domestic services have helped the husband accumulate from his earnings, to invest in property, these acts give her no equitable or titular interest in the property so acquired, and a restoration and vesting of complete title in the husband is legally required.

Thus, if she is "at fault" she forfeits all under a proper construction of the alimony statute; but if he is "at fault," he gets all of the property acquired by their team effort and pays her only what is "equitable" for her support because of a misconstruction of the restoration of property statute.

The unacceptable character of such a result and its effect on contemporary society have promoted a host of often repeated legal fictions that were created because of the unwarranted construction of the restoration of property statute. Among these fictions are: (1) if the divorce is or should have been granted to the wife, she is entitled to permanent alimony as a matter of right (this ignores the requirement that she have insufficient estate of her own); (2) fault is not an important element to consider in the determination of permanent alimony (this ignores the statutory requirement that she be sufficiently free from fault to warrant a judicial finding that she is entitled to a divorce); (3) even though the divorce is granted to the husband if the wife is free from moral delinquency she is entitled to lump sum alimony and property settlement in the amount of one-third of his estate in most ordinary cases which are uncomplicated by the presence of special factors. (This mixes the no-fault concept of an equitable division of property acquired by the joint efforts of the parties with the fault concept of compensation of the impoverished and innocent wife by means of money damages called "alimony").

 The distribution or division of property acquired during marriage by the team effort of the marital partners, is, strictly speaking, not alimony. See Vol. 2, Nelson on Divorce (1961 Revision), Sec. 14.03, p. 7. Where property is acquired during marriage by the joint efforts of the parties, it should be divided between the spouses according to what is just and reasonable. Vol. 2, Nelson on Divorce (1961 Revision), Sec. 14.138, p. 190. This division is a distribution of property in kind or where that is impracticable the value of the interest in property in money can be adjudged payable in a gross amount or in installments where that method is suitable. Alimony is always represented by money and is damages to compensate for loss of marital support and maintenance.

 In contemporary life we are confronted with the wife who is a wage earner and a homemaker, the wife who removes herself from the labor market and confines her activities to homemaking, and the wife who works actively as a business associate of her husband in an identifiable business venture. In Heustis and Reed, the wife was exclusively a homemaker. In Goldstein, she was an active business associate. Each marriage was one of some duration during which property had been acquired. We regarded a division of one-third of the jointly acquired estate to the wife as acceptable under the circumstances in Heustis. We accepted a fraction of less than one-third as proper in Reed. There the facts showed a proportionately much greater contribution by the husband to the acquisition of a relatively large estate. In Goldstein, we approved what practically amounted to an equal division, and pointed out that it is a rare instance, indeed, when more than a fifty-fifty division to the wife is just or proper. These are broad guidelines; there is nothing immutable about them. Fault is not a relevant consideration except when personal considerations are present to the extent that the spouse concerned can be said to have made no contribution to the acquisition of the property. In such instance, the spouse's interest is insignificant or nonexistent, not because of fault, but simply because the concerned spouse made no contribution to the acquisition of the property. Record title and possession are generally neither material nor important. Once, however, the husband is adjudicated as entitled to be regarded as owner of land in fee simple, then as only the wife is statutorily entitled to alimony in the technical sense, by like token the husband's so

determined fee simple title may not be divested for the payment of *alimony,* as that term is properly used in its pure sense, because of our statutory restriction against such divestiture of title. KRS 403.060(1). The ambivalent attitude of the common law still casts shadows in our early formulated statutes to which we must give a decent respect.

■ The first step is a division of the property acquired by the team effort, then the separate question of permanent alimony must be faced. At that point, the approach changes. Fault becomes a factor. Is the wife entitled to a divorce? If she is not, then she is not entitled to permanent alimony. That is no problem in the instant case.

■ The next necessary determination is, even though she is entitled to a divorce, does she have "sufficient estate of her own"? Whether she has sufficient estate of her own depends upon what she owns and what she has been awarded as her part of the division of property acquired by the joint efforts of the parties. Her estate as thus determined is insufficient unless it will yield income or profits sufficient for her comfortable maintenance in a style suitable to the social standing established by the parties during marriage without her being required to consume the principal. Cf. Scott v. Scott, Ky., 433 S.W.2d 631 (1968).

■ If all legal conditions necessary for the allowance of permanent alimony are satisfied, then the trial judge is vested with a wide discretion to determine the amount and method of payment of the money damages awarded called "alimony." He shall make an award that is "equitable." There are so many considerations which are relevant that it would be pointless to attempt a complete enumeration of them. The amount of the husband's estate and his ability to pay and the wife's financial condition and her ability to maintain herself, in whole or in part, are material aspects.

The ages, health, and prospects of the spouses, and the presence of infant children whose welfare must be considered are all elements of the problem. The relative fault of the parties, and significant sociological consequences should be weighed in alimony amount determinations.

■ In the case before us, we hold that the trial judge should redetermine the issue according to the principles that we have outlined. We see no legal impediment to postponing a sale of the residence during the minority of the child. Cf. Cooke v. Cooke, Ky., 449 S.W.2d 216 (1969). We do not intend, notwithstanding our expressions, to place improper strictures upon the trial judge. It is he who must look at the total picture and fashion the result within the rules and discipline of our system. As long as the adversary system of justice is used as the vehicle to resolve and adjust the disputes that arise from the dissolution of a marital partnership, the heart, soul, and conscience of the system must rest in the impartial, objective, perceptive, and sympathetic figure who makes the system work and respond to changing human needs—the trial judge.

The judgment is reversed for further proceedings consistent herewith.

All concur.