**Betty Carole MOORE and Robert L. Gwin, her Attorney, Appellants,**

**v.**

**Norman MOORE, Appellee.**

Court of Appeals of Kentucky.

March 3, 1972.

Robert L. Gwin, Gwin, Iler & Waitman, Owensboro, for appellants.

Dan Cornette, Jarvis, Cornette & Payton, Greenville, for appellee.

EDWARD P. HILL, Jr., Judge.

The appellant, Betty Carole Moore, questions the propriety of the judgment awarding her alimony and child support; while her attorney, the Honorable Robert L. Gwin, contends the attorney fee of $1,118.10 is inadequate for the services rendered.

Appellant and appellee were first married in 1950. Two sons were born during this marriage, which ended in divorce in 1955. These boys are now 17 and 18 years of age. After their separation, appellant remarried another and to this marriage two daughters were born. Her second marriage also ended in divorce, and appellant and appellee rekindled the flame and married the second time in February 1963. Thereafter another son was born to their marriage. During appellee's second marriage to appellant, he adopted her two daughters by the interim marriage.

The chancellor granted appellant an absolute divorce on clearly proven grounds of adultery. The judgment appealed from awarded to appellant an itemized list totaling $6,996.27. The judgment found the net worth of appellee to be approximately $17,000 and undertook to award alimony to appellant Betty Carole Moore amounting to

approximately 42 percent of appellee's net worth. We shall discuss the four items used by the chancellor in arriving at his total of $6,996.27 designated as alimony.

Item One: The judgment directed appellee to convey to appellant Betty Carole Moore his one-half interest in the Second Street property and found his interest or equity therein to be worth $785.33 as of the date of the judgment. The Second Street property was owned by appellant at the time of their marriage and she was entitled to restoration of appellee's interest in this property. See Colley v. Colley, Ky., 460 S.W.2d 821 (1970).

Item Two. The judgment directed the appellee to pay the balance due on the Second Street property and fixed the amount at $3,929.33. This was error because the findings of fact demonstrate that the balance due on the mortgage was only $2,448.56. This part of the judgment contains an error of $1,480.77.

Item Three: Furniture, fixtures, appliances, and an automobile were valued at $2,500 and were designated as a $1,250 contribution under alimony, representing appellee's one-half of this item. We find no fault with this item.

Item Four: The judgment directed appellee to convey to appellant his one-half interest in their Broad Street home, appellee's equity in which was fixed at $1,031.61. Practically no issue is made as to this item, and we find it correct.

Adding item one to the reduced amount found in item two, we have a total of $2,266.10 to deduct from the total award of alimony, leaving only $4,730.17, which is considerably inadequate.

The appellant seriously argues on this appeal that the chancellor erroneously undervalued the appellee's only remaining asset, consisting of 32.76 percent of the stock in the Quality Blacktopping Company, a small family-owned corporation. She contends that the book value of his interest in this stock was $80,695.31 and that its actual value according to her witness, William Northcutt, Jr., was $71,261. The appellee's stock ownership was restricted in that he was required upon wishing to sell, to offer it first to his father or sister before offering it for sale to anyone else. There were other restrictions. There was evidence on behalf of appellant that the market value of this stock was between $10,000 and $15,000. The chancellor found the value to be $15,000.

The chancellor's findings of fact contained the following itemized list of the appellee's part of the earnings of the blacktopping company:

| | | | | |
|---|---|---|---|---|
| "1963–$8,030.69 | Drew it all | | | |
| 1964–$9,592.89 | Drew it all | | | |
| 1965–$9,674.26 | Drew it all | | | |
| 1966–$8,500.00 | Drawn out | $9,784.56 | Left in Treasury | |
| 1967–$8,000.00 | Drawn out | $11,487.11 | Left in Treasury | |
| 1968–$12,425.00 | Drawn out | $6,895.74 | Left in Treasury | |
| 1969–$13,589.88 | Drawn out | $27,135.46 | Left in Treasury." | |

We cannot determine from the findings of fact whether appellee has a right to withdraw these annual earnings, which total $55,302.87 for the four years ending with the year 1969. If so, it would seem obvious that the value ($15,000) fixed by the chancellor was clearly erroneous.

Actually the value of the appellee's stock would be an important factor in dividing the jointly accumulated property under Colley. However, the earning history and potential, not necessarily the market value, would be important in fixing periodic alimony as it would relate to the capacity of the appellee to pay such alimony.

We direct that on remand the chancellor inquire into not only the market value of the appellee's interest in the company, but the appellee's right to the earnings "left with the Treasury," and proceed to try all the issues as outlined in Colley, supra.

The chancellor will first restore to either or both parties any property he or she may have obtained directly or indirectly from

or through the other during the marriage, in consideration or by reason thereof, in accordance with KRS 403.065.

Next he will ascertain the value of the property acquired by their joint efforts and make a "just and reasonable" division of the same.

Finally he should consider the wife's claim for alimony and be governed by KRS 403.060(1) and Colley v. Colley, supra.

 Inasmuch as we are reversing the judgment as to alimony and property settlement questions, and in view of the fact that child-support payments are always subject to change, we also think the chancellor should reconsider the question of child support in the light of more recent conditions of the children and the present ability of appellee to make such payments.

The judgment required the appellee to pay $125 weekly for the support of the five children and made binding the agreement by the appellee to pay the medical, hospital and dental expenses for the children. The appellant strenuously contends that this amount is inadequate for the support of the children according to their customary standard of living. The findings of fact show appellee's earnings from 1963 through 1969 to range between $8,030.59 and $13,589.88. This was appellee's take-home pay. Beginning with the year 1966, appellee's stock interest earned considerably more than he withdrew from the company.

It is concluded that the judgment should be and is hereby reversed for proceedings consistent herewith.

There is some contention by the appellee that his stock ownership was a gift from his father. Be that as it may, appellee has owned the stock since 1963 when the company commenced to show nice profits, and the company's records indicate that appellee's efforts have contributed substantially to the present value of his stock. Appellee's ownership of the stock apparently has enabled him to substantially increase his earning capacity as well as the financial standing of the company.

 We come next to the contention of appellant Robert L. Gwin that the fee allowance to him is inadequate. He contends that included in his fee should be an item of $250 for the expenses incident to the examination of the books and records of the appellee's company by a so-called qualified person. He claims his fee should have covered $6,322.58 for time spent up to the date of the judgment, plus $700 fee for prosecution of this appeal. We have examined the record on appeal and are unable to say the fee allowed was inadequate for the services rendered to the date of the judgment. However, we think appellant Gwin is entitled to an additional fee for prosecuting this appeal, which is a matter that should be determined by the chancellor. Cf. Maynard v. Maynard, Ky., 251 S.W.2d 454 (1952), and KRS 453.120.

Wherefore, the judgment is reversed in part and affirmed in part for further proceedings consistent herewith.

All concur.