**Clyde W. REED, Appellant,**

**v.**

**Jean Moore REED, Appellee.**

Court of Appeals of Kentucky.

June 30, 1972.

Rehearing Denied Oct. 6, 1972.

John C. Lovett, Lovett & Lewis, Benton, Raymond B. Dycus, Smithland, for appellant.

L. M. Tipton Reed, Neeley, Reed & Brien, Mayfield, William E. Scent, Reed, Scent & Walton, Paducah, for appellee.

CULLEN, Commissioner.

The appeal here under consideration is from an order overruling a motion made to reopen that part of a divorce judgment relating to alimony payments.

On February 7, 1969, the Marshall Circuit Court granted Clyde W. Reed a divorce from his wife, Jean, on the ground of abandonment, but awarded Jean "alimony" in a lump sum of $500,000 payable within three months after judgment (reduced by credits to $390,000), plus $25,000 per year payable for a period of ten and one-half years, the obligation for the latter payments to cease upon Jean's prior death but to be payable in full, commuted amount on Clyde's prior death.

On an appeal to this court the judgment was affirmed, except for minor modifications as to the time allowed for payment of the initial sum of $500,000. Reed v. Reed, Ky., 457 S.W.2d 4.

The mandate on this court's opinion was issued on June 26, 1970. A hearing was scheduled in the circuit court for July 13, 1970, "for the purposes of resolving any questions that may arise out of the mandate of the Court of Appeals of Kentucky as it affects the judgment entered by this Court and any other matters that may be brought before this Court by counsel for either of the parties." In the meantime, issues arose as to attorney fees and as to interest and penalties on the supersedeas bond, and the hearing was continued to August 7, 1970. On that date the court entered a "Final Order" determining the issues as to attorney fees, interest and penalties; crediting Clyde for payments made on the initial obligation of $500,000; and directing when the remaining payments on that obligation should be made, in accordance with this court's mandate. The "Final Order" further specified the exact dates on which the $25,000 payments should be made. On the same day a "Supplemental Final Judgment" was entered making provisions for security for payment of the unpaid portion of the initial obligation of $500,000.

Subsequently, by agreement of the parties, Clyde paid before due the remaining portion of the initial obligation of $500,000, and paid the first of the $25,000 payments, and on November 6, 1970, the circuit court entered an "Agreed Order and Satisfaction of Judgment" which recited that the judgment was fully satisfied as to all obligations except the $25,000 payments thereafter coming due. This order contained the following clause:

"This cause is now stricken, settled in full, including satisfaction in full of the judgment, with the exception of said future alimony payments; but this Court retains jurisdiction of the parties and of the subject matter of this action for any and all necessary and proper orders relating to the future alimony payments."

Although the order is styled "Agreed Order and Satisfaction of Judgment," the document was not endorsed by the parties or their counsel nor is there anything in the record to indicate that there was any agreement except as to satisfaction of the judgment to the extent of the payments that had been made. For some unex-

plained reason the order was directed to be "entered of record as of August 7, 1970."

On November 27, 1970, this court handed down its opinion in Colley v. Colley, Ky., 460 S.W.2d 821, restating the principles applicable to property restoration, property division, and alimony in divorce cases. The mandate was issued on that opinion on December 29, 1970.

On January 28, 1971, Clyde Reed filed in the Reed case the motion here in issue, in which he sought to have the judgment reopened as to alimony payments not yet due, for reconsideration in the light of *Colley*. The circuit court overruled the motion on the ground of lack of power to reopen the judgment entered pursuant to the mandate of this court.

In his motion to reopen the judgment, Clyde referred to the clause in the "Agreed Order and Satisfaction of Judgment" of November 6, 1970, which recited that the court retained jurisdiction "for any and all necessary and proper orders relating to future alimony payments," and he undertook to interpret this as a reservation by the circuit court of the power to *modify* the judgment as to future alimony payments. He asserts that under the authority of such cases as Keach v. Keach, 217 Ky. 723, 290 S.W. 708, the trial court by virtue of such reservation had power to reopen the judgment even though the future payments constituted a form of lump-sum alimony.

■ We do not consider the question of whether the power to modify a divorce judgment as to lump-sum alimony validly can be reserved, because it is our opinion that the trial court had no jurisdiction, procedurally, to insert the purported reservation clause in the November 6 order. There was no such reservation in the original judgment of February 7, 1969. Following the affirmance of that judgment by this court, with respect to the $25,000 payments, the circuit court had no jurisdiction

on its own motion to amend the judgment. Caskey v. Nussbaum, 236 Ky. 848, 34 S.W.2d 716; City of Lexington v. Garner, Ky., 329 S.W.2d 54.

The reservation clause cannot be considered to have been inserted by agreement of the parties because the record does not show that there was any such agreement, nor was the so-called "Agreed Order and Satisfaction of Judgment" endorsed as agreed to.

■ In his motion to reopen, Clyde undertook to invoke CR 60.02 as a further source of power in the circuit court to reopen the judgment. He argues here that the *change* in the law of alimony and property settlement which he says was made in *Colley* was such as to warrant relief on the ground set forth in Clause (5) of CR 60.02 of its being "no longer equitable that the judgment should have prospective application."

We do not consider the situation in the instant case to be one coming within Clause (5) of CR 60.02. In the first place, the judgment here in question has "prospective application" only in a limited sense, in that the only prospective feature consists of a plan for deferred payment of a fixed obligation. In the second place, there is no certainty that the ultimate obligation of Clyde Reed under a judgment based on Colley would be so different from that under the present judgment as to establish the equitable basis contemplated by CR 60.02 for a reopening. It is quite possible that the same result would be achieved through a division of "team-effort" assets as was achieved in the name of alimony. We note that the trial court, in the findings and conclusions on which the original judgment was based, stated that "the Court is acutely aware of the overall contribution which she has made for some twenty years in the keeping of the home, rearing of the children and making herself satisfied with social activities

that were far less financially demanding than one might expect in her circumstances." We also note that in the opinion of this court in Reed v. Reed, Ky., 457 S.W.2d 4 at 8, reference was made to the holding in Cooke v. Cooke, Ky., 449 S.W.2d 216, that where "property has been accumulated in the course and by virtue of the joint efforts of husband and wife as a marital unit, one carrying out his responsibilities and the other carrying out hers * * * upon dissolution of the marriage, the trial court should be free to weigh it up and determine when, whether and how it is to be cut off and separated out," and the opinion said: "Here it appears that the same reasoning should apply." The opinion further said: "Although Jean worked little in the various business ventures she ran the home at such a minimum expense, commensurate with the family income and wealth, that we cannot say she did not assist in creating that wealth." So it appears that the concept of *Colley* with respect to division of "team-effort" property was in substance applied in the Reed judgment. This was recognized in the opinion in *Colley* when reference was made to the Reed case as one in which this court accepted an award to the wife of a fraction of less than one-third "of the jointly acquired estate."

It is true that a change in the law was recognized as a basis for reopening a judgment as to its prospective application, in National Electric Service Corp. v. District 50, UMW, Ky., 279 S.W.2d 808. However, in that case the change in the law definitely removed the basis for the judgment, and the judgment was one of continuing prospective application in that it regulated future situations.

■ It is our opinion that a reopening of a judgment, as to its prospective application, on the ground of a change in the law, should be done only in aggravated cases where there are strong equities. Cf. City-County Planning Commission v. Fayette County Fiscal Court, Ky., 449 S.W.2d 766; 46 Am.Jur.2d, Judgments, Sec. 768, p. 930. We do not consider the present case to be such a one.

The judgment is affirmed.

All concur except OSBORNE, J., who dissents.

## DISSENTING OPINION BY JUDGE OSBORNE

OSBORNE, Judge (dissenting).

In my opinion the majority opinion in this case is defective in so many respects that I will have to deal with them in separate numbered paragraphs.

### I

The majority opinion in effect finds that that portion of the judgment which reserved the right to reopen was not agreed to by the parties and that the circuit judge on his own motion amended the judgment. The problem with this position is that the record does not bear out the majority opinion. At a hearing before the court prior to the drafting of the judgment the following colloquy took place between the attorneys and the judge:

"Mr. Lovett: . . . and she will also give to Mr. Reed a complete release of all claims which she has against him arising out of this action except the $25,000.00 alimony payments for the future . . . .

Judge: The attorneys for both parties have agreed to this method of settlement and that the attorneys for the defendant will be responsible for the drafting of a formal order and judgment in compliance with the agreement; and it will be submitted to the Court at the earliest possible time *after approval by the attor-*

*neys for both sides* and will be signed and entered as of this date.

Mr. Lovett: That will be satisfactory with the defendant.

Mr. Reed: That will be satisfactory with the plaintiff." (Emphasis added). It will be noted from the above that the court directed the attorneys not to submit the drafts until "after approval by the attorneys." I believe this court can do nothing but assume that the drafts were so approved. Attorneys for appellee do not deny that they approved the drafts. They carefully skirt this issue by saying that the order was not an agreed order because neither the parties nor their attorneys signed the order so entered. For this court to now sua sponte say that the trial court injected this clause into the order on its own motion is not supported by the record.

## II

In my opinion appellee did not properly attack the reservation of jurisdiction in the trial court. Certainly, she does not deny that she received a copy of the order upon its entry. CR 52.02 provides:

"Not later than 10 days after entry of judgment the court of its own initiative or on the motion of a party . . . may amend its findings or make additional findings and may amend the judgment accordingly."

Appellee upon receiving a copy of the order certainly had an obligation to move the court to strike this language if she had not agreed to it. We have previously held that where a jury returns a verdict patently defective on its face the party must immediately move that the jury be recommitted for correction of the verdict. See Stucker v. Bibble, Ky., 442 S.W.2d 578; Commonwealth, Department of Highways v. Bauman, Ky., 468 S.W.2d 315. It is my opinion the same rule should apply here. Even if Mrs. Reed's attorneys did not agree to the insertion of this matter in the order they had an affirmative obligation to move to strike it in the circuit court and could

not wait until the matter got to this court and raise it for the first time.

## III

If I understand the majority opinion, the court is saying that since there is no certainty that the ultimate obligation of Clyde Reed under a judgment based on Colley would be different from the present judgment his claim does not have sufficient equity to permit reopening under CR 60.02. Under this type of reasoning, we could "guess" 90% of those who appeal to this court out. We have in the last several months remanded a large number of cases to be considered under Colley where there was no guarantee that the ultimate result would be different. See Goff v. Goff, Ky., 481 S.W.2d 80, rendered May 26, 1972; Noel v. Noel, Ky., 481 S.W.2d 46, rendered May 12, 1972; Petersen v. Petersen, Ky., 479 S.W.2d 892, rendered April 28, 1972; Coleman v. Coleman, Ky., 479 S.W.2d 602, rendered March 31, 1972; Dahlenburg v. Dahlenburg, Ky., 479 S.W. 2d 606, rendered March 31, 1972; Moore v. Moore, Ky., 477 S.W.2d 792, rendered March 3, 1972; Clark v. Clark, Ky., 471 S.W.2d 740, rendered October 8, 1971; Howard v. Howard, Ky., 469 S.W.2d 353, rendered June 29, 1971.

## IV

The trial court designated the award to Mrs. Reed as alimony. The divorce was granted to Mr. Reed. Under Colley, Mrs. Reed could have received nothing unless this court found that she should have been awarded the divorce. I assume the basis of the court's ruling is that this court is considering the award to be not alimony but jointly acquired property or marital property. If this be the case, the court is still in error for the original Reed case was tried under the old Heustis rule under which we were awarding a percentage of the marital property without regard to the respective contribution of the parties to the accumulation of the property. If this proceeding should be remanded to the trial court as Mr. Reed now requests, the hearing would have to be conducted under

Chapter 182 of the Acts of 1972 as Section 26(3), (4) of that Act provides:

"(3) This Act applies to all proceedings commenced after its effective date for the modification of a judgment or order entered prior to the effective date of this Act.

(4) In any action or proceeding in which an appeal was pending or a new trial was ordered prior to the effective date of this Act, the law in effect at the time of the order sustaining the appeal or the new trial governs the appeal, the new trial, and any subsequent trial or appeal."

If the proceedings are controlled by Chapter 182, the results could be considerably different from those incorporated in the original judgment as the trial court would be bound to consider the wife's contribution to the accumulation of the estate.

### V

When Mrs. Reed filed her suit, she requested that the court award her *alimony*. The trial court, when entering the judgment, made an award of *alimony*. Appeal was taken to this court and we affirmed this award of *alimony*. The case went back to the circuit court. It modified its judgment in accordance with the mandate of this court and reserved the right to modify future *alimony* payments. Motion was made before the circuit court to modify *alimony* payments. The circuit court denied that motion because it was of the opinion it did not have jurisdiction. Appeal was taken to this court to review the actions of the circuit court in respect to *alimony* payments. The majority opinion of this court affirms the action of the circuit court and recites as its reason for doing so that the payments were never *alimony* at all. I would suggest to the majority they should cite as authority for their action today "Alice in Wonderland."

For the foregoing reasons, I respectfully dissent.