**John H. CLARK, Appellant,**

v.

**Mabel L. CLARK, Appellee.**

Court of Appeals of Kentucky.

Nov. 17, 1972.

Rehearing Denied Dec. 15, 1972.

F. Selby Hurst, Lexington, for appellant.

Elwood Rosenbaum, Rosenbaum & Smith, Lexington, for appellee.

CULLEN, Commissioner.

John H. Clark appeals from a judgment of divorce, complaining of its provisions as to the determination and allotment of the wife's share of the "joint-effort" property, and as to the allowance of interest on deferred payments. Mabel L. Clark, the wife, cross-appeals, claiming that the joint-effort property should have been divided in kind or should have been sold and the proceeds apportioned, and that she should have been allowed alimony in addition to the award of her share of the joint-effort property. Elwood Rosenbaum, the wife's attorney, also cross-appeals, claiming that the portion of his fee directed to be paid by the husband should be increased.

 A motion by the appellee Mabel Clark to dismiss the direct appeal and a motion by the appellant to dismiss the cross-appeals were passed to the merits. The motion to dismiss the direct appeal has no valid basis and is overruled. The motion to dismiss the attempted cross-appeal

by the attorney is sustained because he was not named as an appellee on the direct appeal, and under CR 74 a party can take a cross-appeal only against a party who has taken an appeal against him. A proper consideration of the motion to dismiss the wife's cross-appeal required a consideration of the merits of the case, and since upon that consideration we are convinced the wife's cross-appeal must fail on the merits, we pass the motion to dismiss that cross-appeal.

A judgment granting a divorce to each of the parties, upon a finding that each was to some extent at fault, originally was entered on February 19, 1970. That judgment awarded the wife a substantial sum as "alimony." The wife appealed from that judgment and this court, in Clark v. Clark, Ky., 471 S.W.2d 740, remanded the case to the circuit court with directions to reconsider the case under the principles set out in Colley v. Colley, Ky., 460 S.W.2d 821. The circuit court, on January 31, 1972, entered a new judgment in accordance with that direction. That judgment, which is the one here on appeal, reaffirmed the provisions of the original judgment as to the granting of a divorce to each party, and granted to the wife a sum of money as her share of the "joint-effort" property, but allowed her nothing as "alimony."

■ The trial court found that the value of the joint-effort property amounted to $645,574.33, and that the wife's efforts entitled her to 40 percent of the value of that property, or $258,000. Against that sum the court allowed various credits, such as for temporary maintenance payments and for specific items of personal property retained by the wife, reducing the net award to $222,100. The husband was directed to pay $62,100 of that amount by March 1, 1972, and the balance in seven annual installments of $16,000 each, beginning in March 1973 and extending through March 1979, plus a final payment of $48,000 on February 1, 1980. The judgment directed that the deferred sums bear interest at five

percent per annum from *the date of the original judgment of February 19, 1970*. The husband's complaints on this appeal are that the award to the wife is excessive and that interest should not have been awarded from the date of the original judgment. We shall consider first the question of excessiveness.

The parties were around 30 years of age when they married, and the marriage, childless, lasted for 22 years, so now they are in their early 50's. The husband's business is the breeding and trading of horses. At the time of the marriage John had a net worth of $37,500. The trial court found that his net worth had increased by $645,574.33 by the time the divorce was granted, and it was of the latter estate that Mabel was awarded 40 percent.

Aside from the performance of the customary duties of a housewife, Mabel performed services in connection with John's business. The evidence was conflicting as to the extent of those services. There was substantial agreement, however, that Mabel handled most of the important financial details of the business; in other words, she was in charge of the cash register. John was quoted in a journalistic account of his business as having said: "Mabel is invaluable. She handles the money, oversees the bookwork and keeps track of things." Her evidence was that she rendered services in addition to the financial work, in customer relations. It is our opinion that the evidence sustained the finding of the circuit court that Mabel's joint-effort contribution amounted to 40 percent. The salary of $1,500 per year which she received from the business when it was operated as a corporation, prior to 1964, was no more the full measure of the value of her contribution to the business than was the salary received by John the full measure of the value of his contribution.

John complains that it is unfair to award Mabel 40 percent of the present estimated value of the joint-effort estate because a substantial portion of that value represents

capital gain on which John will have to pay income tax; that in effect he will be required to pay income tax on Mabel's capital gains. Mabel's response is that she will be glad to take her share by way of a division in kind, rather than in cash, and will then assume the burden of capital gains' tax on her share. This response is of course based on the premise that the actual value of the estate is substantially in excess of the value found by the circuit court.

John nowhere in his brief refers to any *evidence* as to how much of the value of the joint-effort estate represented capital gain. He *assumes* that around $600,000 of the value of $645,574.33 constitutes capital gain, and that a tax of $150,000 will be due on liquidation. He argues on that basis that the joint-effort estate should have been valued, for division purposes, at not more than $500,000, of which Mabel's 40-percent share would be only $200,000.

It seems to us that there are too many variables involved for us to say that the trial court's division of the joint-effort estate was erroneous. The estimated percentage of Mabel's contribution is simply an estimate. The same is true of the estimated value of the estate itself (as evidenced by Mabel's argument that the estimate was far less than the actual value). The claimed amount of capital gain is nothing more than an assumption.

The gross award to Mabel of $258,000 was reduced by credits, which did not involve any of the estate on which John claims he will have to pay capital gains tax, to $222,100. This is only some $22,000 more than 40 percent of the sum John says will be the value of the estate after payment of capital gains taxes. That is only a matter of four or five percent on the gross estimated estate. The variables in estimates certainly can justify that much tolerance.

We think some significance can be attached, as concerns values, to John's un-willingness to divide the property in kind rather than paying Mabel a cash percentage of the value estimated by the court.

We conclude, therefore, that the amount of the award to Mabel is not excessive.

■ It is our opinion, however, that the allowance of interest from the date of the initial judgment of divorce, on the deferred payments, cannot be upheld. The theory of the trial court seems to have been that from the moment the divorce was granted Mabel's right to her share of the joint-effort estate became vested, and from that point on John should be accountable to Mabel for the use of her share until payment be made to her of the value of her share. We think that the fallacy in that proposition is that until an adjudication was made (in the final judgment) as to what was Mabel's share, she had nothing more than an unliquidated claim against John. The situation here is not comparable to that in Curtis v. Campbell, Ky., 336 S.W.2d 355, where the surviving members of a partnership, following dissolution of the partnership by virtue of the death of one of the members, continued to use the assets of the partnership for their own profit without making any pretense of complying with their *contractual* obligation to determine the fair value of the decedent's interest and to pay it to his estate. There the decedent's interest was ascertainable by bookkeeping principles. In the instant case, Mabel's share could be ascertained only by a court's evaluation of the many intangible factors involved in a wife's contribution to the accumulation of the family estate.

It is our opinion that interest on the deferred payments should have been allowed *only from the date of the final judgment.* See Maynard v. Maynard, Ky., 251 S.W.2d 454; Heustis v. Heustis, Ky., 381 S.W.2d 533.

This disposes of the direct appeal.

Mabel's contention, on her cross-appeal, that she should have been awarded *in kind* her share of the joint-effort estate, is not valid. We have here a *business* estate, the division or forced liquidation of which could materially depreciate its value and could destroy the basis of the husband's earning capacity. In those circumstances it is proper to allow the wife the value of her share in cash, payable in installments. See Broida v. Broida, Ky., 388 S.W.2d 617; Walters v. Walters, Ky., 419 S.W.2d 750. Actually, Mabel's desire to be awarded her share in kind appears to be prompted solely by her thought that the actual value of the estate far exceeds the value determined by the circuit court. However, she does not make a direct contention that the value fixed by the court is too low, and as hereinbefore pointed out she would have difficulty in securing a reversal on that ground, because of the fact that the extent of her contribution is an estimate also.

The further contention, on the cross-appeal, that Mabel should have been awarded alimony in addition to her share of the joint-effort estate, likewise is without merit. Mabel's separate estate, counting her share of the joint-effort estate, amounts to $291,000. The evidence warrants the conclusion that this is ample to maintain the standard of living to which she was accustomed. Her claim that because in one year John's business had a "cash flow" of $100,000, the family's cost of living was at an expenditure rate of $100,000 per year, is preposterous. And regardless of the standard-of-living factor, it must be remembered that the circuit court found the wife to be substantially at fault, which is significant, under Colley v. Colley, Ky., 460 S.W.2d 821, when it comes to awarding alimony.

On the direct appeal the judgment is affirmed except that as to the allowance of interest on deferred payments it is reversed with directions to allow interest only from the date of the final judgment, January 31, 1972. On the cross-appeal of Mabel L. Clark the judgment is affirmed. The cross-appeal of Elwood Rosenbaum is dismissed.

All concur.